JOSE P., et al., Plaintiffs,

v.

Gordon M. AMBACH, et al., Defendants.

UNITED CEREBRAL PALSY OF NEW YORK CITY, INC., et al., Plaintiffs,

v.

The BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NEW YORK, et al., Defendants.

DYRCIA S., et al., Plaintiffs,

v.

BOARD OF EDUCATION OF the CITY OF NEW YORK, et al., Defendants.

Nos. 79 C 270, 79 C 560 and 79 C 2562.

United States District Court,
E.D. New York.

Feb. 24, 1983.

See also 2 Cir., 669 F.2d 865.

Brooklyn Legal Services Corp., Brooklyn, N.Y. (John C. Gray, Jr., and Harold Adler, Brooklyn, N.Y., of counsel), Advocates For Children Of New York, Inc., Long Island City, N.Y. (Jane R. Stern, Long Island City, N.Y., of counsel), for Jose P., et al.

Rebell & Krieger, New York City (Michael A. Rebell, Arthur R. Block and Helene M. Freeman, New York City, of counsel), for United Cerebral Palsy of New York City, Inc.

Puerto Rican Legal Defense and Education Fund, Inc., New York City (Gabe Kaimowitz, New York City, of counsel), for Dyrcia S., et al.

Patterson, Belknap, Webb & Tyler, New York City (Harold R. Tyler, Jr., Togo D. West, Jr., Sarah E. Burns, and Francis Olivieri, New York City, of counsel), Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City (Jeff Glenn, Seth Cummins, Noel Ferris and Meryl Kaynard, New York City, of counsel), for New York City defendants.

Kenneth Pawson, New York State Educ. Dept., Albany, N.Y. (Robert D. Stone, Albany, N.Y., of counsel), for State Com'r of Educ.

Public Educ. Ass'n, New York City (Ruth V. Siegel and Jeanne S. Frankl, New York City, of counsel), for amicus curiae.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

This matter has been the subject of this court's previous memoranda and orders, familiarity with which is assumed. The City Defendants, joined by the State, have moved pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to vacate or modify the judgments filed December 20, 1979 and February 27, 1980. Since the substantive provisions in the two judgments are for the most part identical, they will generally be referred to as the judgment.

The initial action, *Jose P. v. Ambach,* was brought on February 1, 1979 by handicapped children alleging that defendants were depriving them of their rights under the Education for All Handicapped Children Act (the Education for Handicapped Act), 20 U.S.C. § 1401 *et seq.,* the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* the New York Education Law, § 4401 *et seq.,* and the fourteenth amendment to the United States Constitution by failure to provide a free appropriate public education. The defendants conceded failure to comply with the statutory requirements, in that they had not, in timely fashion, evaluated and placed several thousand children.

Plaintiffs then moved for certification as a class action. The City Defendants conceded the propriety of the class. The State Commissioner opposed on the ground that plaintiffs had failed to exhaust the appeal procedure provided by New York Education Law § 4404. After considering the inefficacy of the administrative remedies, including the issuance of four remedial orders by the State Commissioner, this court, by order dated May 16, 1979, certified the class as including all handicapped children between the ages of five and twenty-one whom the City Defendants had been notified pursuant to state regulations may be handicapped and who had not been evaluated within thirty days or placed within sixty days of the notification. The Court also found that the case was such as to require appointment of a Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure and appointed Marvin E. Frankel by order dated June 8, 1979.

In the meantime United Cerebral Palsy of New York City, Inc. (United Cerebral Palsy) and six handicapped children brought suit on March 2, 1979 (79 C 560) on their own behalf and on behalf of a class allegedly deprived of a free appropriate

public education. The complaint alleged, among other things, that defendants had failed not only promptly to evaluate and place handicapped children, but to formulate adequate individual educational plans, to provide annual reviews, adequate facilities, special instruction, and related services, and to place students in the least restrictive environment.

The court, in a memorandum and order dated August 10, 1979, noted that the issues raised by the *United Cerebral Palsy* complaint went beyond the so-called "waiting list" problem and involved structural problems in existing programs and related services, that these issues were intimately related to those presented in the *Jose P.* case, and that United Cerebral Palsy counsel had been actively participating in the working sessions before the Special Master. The court therefore deferred a final decision on the certification of the class, the standing of United Cerebral Palsy, and the defendants' request to consolidate, until the court had the benefit of the findings of the Special Master.

Certain handicapped Hispanic children and Aspira of America, Inc. and Aspira of New York, Inc. brought a similar action on October 12, 1979, *Dyrcia S. et al. v. Board of Education,* (79 C 2562), alleging that handicapped Hispanic children required bilingual-bicultural special education programs and were not being promptly evaluated and placed. Plaintiffs in this case also participated actively in the proceedings before the Special Master.

The Special Master made a report dated December 5, 1979, after what he described as "earnest, creative, good-faith labor by counsel for the parties and *amici,* as well as their clients, to evolve lawful and feasible programs" to achieve the purposes of the lawsuit. With the report he submitted two recommended judgments identical in all substantive respects, one in the *Jose P.* case and a consolidated judgment in the *United Cerebral Palsy* and *Dyrcia S.* cases. The Special Master said the judgment had been "fashioned ... with relatively minimal participation by the special master" and while

"not quite a consent judgment" was "a very close approximation." The City Defendants did not object to the recommended judgment in the sense that they agreed not to appeal unless it were altered in a way urged by the State Commissioner. After entry of the judgment the City Defendants did not appeal.

The judgment was thus, as the Special Master said, the result of "the remarkably collaborative efforts of counsel and the parties." Indeed, City Defendants even now agree that they participated in drafting the blueprint that subsequently became the judgment. Because of these collaborative efforts the Special Master was not required to hear evidence, to conduct exploratory inquiries, to make factual determinations, or to record rulings on incidental questions of law. As to almost every term of the judgment the parties eventually agreed.

The judgment declared that defendants had not made available to the plaintiff class a free appropriate public education in a timely manner, thus violating the requirements of federal and New York law and regulations, and that defendants had the responsibility to make available on a timely basis such a free appropriate public education with appropriate related services in the least restrictive environment for the children in the class. The judgment also provided for a remedial plan.

I

Although all parties agree that as a result of this litigation improvements have been made in according handicapped children their rights, the City Defendants now, some three years later, contend that the Education for Handicapped Act, the Rehabilitation Act, and 42 U.S.C. § 1983 do not provide a basis for the remedy adopted by the judgment.

A

■ The City Defendants argue that the Education for Handicapped Act does not create a private right of action for "broad-based court-ordered injunctive relief," that, except for judicial review of an individual

program under section 615 (20 U.S.C. § 1415), the provisions of the act are enforceable only by administrative agencies, and that mandamus against appropriate federal and state officials to withhold federal funds, after notice and hearing, are the only judicial remedies for violation of the act other than those set forth in section 615.

This court focused on this argument prior to entry of the judgment. In denying a motion to dismiss the *United Cerebral Palsy* complaint the court held that plaintiffs had a right to bring the action. The opinion's references to *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 25 L.Ed.2d 26 (1975), and *Cannon v. University of Chicago*, 441 U.S. 677, 706 n. 41, 99 S.Ct. 1946, 1962 n. 41, 60 L.Ed.2d 560 (1979), make clear that the court did not decide the necessity of exhaustion in the abstract, but after determining that a private right of action is implied by the Education for Handicapped Act. *United Cerebral Palsy v. Board of Education*, No. 79 C 560, memorandum and order at 6–7 (Aug. 10, 1979).

On the appeal of the State Commissioner from the judgment and orders directing payment of attorney's fees, the Court of Appeals for the Second Circuit affirmed this court's holding that plaintiffs, due to the absence of meaningful administrative enforcement, need not exhaust their administrative remedies. The Court of Appeals relied on plaintiffs' assertion of jurisdiction under 42 U.S.C. § 1983 and thus did not pass on whether a private right is implied by the Education for Handicapped Act. *Jose P. v. Ambach*, 669 F.2d 865 (2d Cir. 1982).

The City Defendants contend that the law has changed since the decisions by this court and the Court of Appeals, urging that language in *Board of Education v. Rowley*, —— U.S. ——, ——, ———–——, 102 S.Ct. 3034, 3039, 3051–52, 73 L.Ed.2d 690 (1982), should be read to mean that the act created no private right to a remedy other than the right of a parent or guardian to challenge an individual IEP (individualized educational program) after exhausting administrative remedies.

In the *Rowley* case the Supreme Court considered two questions, namely, what was meant by the act's requirement of a "free appropriate public education," and what was the role of state and federal courts in exercising the review granted by section 615. *Id.* 102 S.Ct. at 3040. The court did not purport to rule on the issue decided by this court. It is hardly fair to read as a rejection of that decision the Supreme Court's language, in describing the text of the act, that "[c]ompliance is assured by provisions permitting the withholding of federal funds." *Id.* at 3039. This court does not so read it.

Nor does *Pennhurst State School v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), stand for the proposition urged by City Defendants, namely, that the terms of funding statutes cannot create rights enforceable by private third parties. In the *Pennhurst* case the Supreme Court found a statutory "bill of rights" to be merely hortatory. The Court assumed, on the other hand, that the statute's express conditions on federal funding created substantive rights, although it was not necessary to decide whether those rights could be enforced by private parties. 451 U.S. at 27–30, 101 S.Ct. at 1544–46. Thus, City Defendants' argument that a funding statute such as the present one can never be enforced except by fiscal coercion is correct only in the sense that the prospective force of the judgment, insofar as it is based on the Education for Handicapped Act, cannot survive the State's decision to terminate its participation in the program. Should the State make that decision, defendants would be free to renew their attack on the judgment.

Since the cases cited by the City Defendants are not inconsistent with the law of this case, this court finds no reason to reconsider its holding that the Education for Handicapped Act creates a private right of action apart from section 615, upon which plaintiffs initially eschewed reliance. Even if that holding were wrong it would not matter. New York allows administrative appeals (under section 615 of the Education

for Handicapped Act and section 4404 of the state Education Law) to be pursued as class actions that seek broad injunctive relief to reform structures and policies. *See* part D *infra*. It would be strange if parents who pursued their administrative remedies in class action form were for that reason to be deprived of their judicial appeal under section 615. The text of that section does not expressly purport to disallow such an appeal. At each level, "any party aggrieved by the findings and decision" may appeal to the next, 20 U.S.C. § 1415(c), (e)(2). Moreover, there is legislative history which if not read to support a private right implied by sections 612 through 614, at least supports the appeal of administrative class actions under section 615. 121 Cong.Rec. 37,416 (1975) (statement of Sen. Williams) (each member of class need not exhaust remedies). Since the complaints amply allege jurisdiction, it is of no moment whether they invoke section 615. *See* F.R.C.P. 8(a); *cf.* 28 U.S.C. § 1653; F.R.C.P. 15(b).

Since exhaustion of remedies has been excused in this case, there is no apparent importance to whether the judgment rests on an implied right, or the express one in section 615. It is implicit in the court's *United Cerebral Palsy* opinion of August 10, 1979, that Congress intended beneficiaries of the Act to be able to challenge system-wide violations in court.

### B

■ The City Defendants also contend that Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, does not permit the "affirmative action" ordered in the judgment and that the federal regulations, 45 C.F.R. Part 84, interpreting the Rehabilitation Act to guarantee a free appropriate public education, are invalid since they purport to grant more than Congress intended.

Section 504 of the Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified handicapped individual . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

Both this court and the Court of Appeals for the Second Circuit recognized that plaintiffs had a private claim under this section, 669 F.2d at 871 & n. 4. The Court of Appeals thereafter, in a case involving the extent to which urban transit facilities must be made available to the handicapped, reaffirmed that "if plaintiffs can prove a violation of section 504, the District Court has inherent power to fashion relief appropriate to the situation." *Dopico v. Goldschmidt,* 687 F.2d 644, 650 (2d Cir.1982). The opinion in that case distinguished *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), which held that a state college whose nursing program required of an applicant the ability to hear was not obliged by "affirmative action" to effect "substantial modifications" of its program to accommodate a deaf person. As the *Dopico* decision noted, the phrase "otherwise qualified" in section 504 was construed by the Supreme Court to mean "one who is able to meet all of a program's requirements in spite of his handicap." 442 U.S. at 406, 99 S.Ct. at 2367. Thus Davis was held not "qualified" to enter a nursing program.

But ever since *Pennsylvania Association for Retarded Children v. Commonwealth of Pennsylvania,* 334 F.Supp. 1257 (1971), 343 F.Supp. 279 (E.D.Pa.1972), and *Mills v. Board of Education of the District of Columbia,* 348 F.Supp. 866 (D.D.C.1972), it has never been considered that handicapped children were "unqualified" to receive an appropriate public education. Those cases were decided before the enactment of section 504. Moreover, the Education for Handicapped Act made it clear that Congress recognized that, far from being "unqualified" for a public education, a handicapped child had a right to an appropriate public education. Thus, extensive modifications which might be "substantial" in other contexts may be reasonable efforts to educate handicapped children. To the extent that the *Davis* opinion rests on the premise

that the applicant was "unqualified" by her very handicap to meet the nursing program's requirements, the decision does not bear on the present case.

As the *Dopico* opinion points out, to say that plaintiffs have a private right of action under section 504 does not establish the extent of the relief to which they are entitled. There remain economic and administrative issues. Burdens out of all proportion to the end to be served should not be imposed. The requirements of the present judgments were drafted by and acquiesced in by the City Defendants. That is persuasive evidence that they did not impose intolerable administrative and financial burdens on the City Defendants. Whether as a matter of equity the judgment should be amended is another question.

### C

The City Defendants also contend that 42 U.S.C. § 1983 has not been properly invoked by the plaintiffs. Since this court has determined that plaintiffs' claim may be asserted under the Education for Handicapped Act and section 504 of the Rehabilitation Act, the court need not consider whether 42 U.S.C. § 1983 affords an independent basis for relief or to what extent *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), has been qualified by *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), and *Pennhurst State School v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

### D

Whether or not plaintiffs have private federal rights enforceable in this court, their assertion of such rights was sufficiently plausible to give this court jurisdiction over the federal claims, *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), and power to assume pendent jurisdiction over plaintiffs' state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Plaintiffs rely on article 89 of the New York Education Law and part 200 of the Commissioner's Regulations. Those provisions create substantive rights enforceable through administrative and judicial appeals. N.Y.Educ.L. § 4404. This procedure will lie for challenges to administrative policies and structures, and broad injunctive relief is available. *E.g., Riley Reid,* 17 Educ.Dept. Rep. 127 (1977); *Kathy Kelly,* 15 Educ. Dept.Rep. 427 (1976).

■ Under New York law plaintiffs need not exhaust their administrative remedies as to these state claims if it would be futile to do so. *Cf. Watergate II Apartments v. Buffalo Sewer Authority,* 46 N.Y.S.2d 52, 57, 412 N.Y.S.2d 821, 824, 385 N.E.2d 560, 563 (1978); *National Elevator Industry, Inc. v. State Tax Commission,* 65 A.D.2d 304, 309, 412 N.Y.S.2d 195, 198 (1978). Such futility has been established as the law of this case. *Jose P., supra,* 669 F.2d at 869–70. In fact, the *Riley Reid* case was an administrative class action attacking many of the same problems and seeking many of the same remedies as *Jose P.* Yet despite retention of jurisdiction from at least 1972 to 1977, and the issuance of four remedial orders during that period, the administrative process was ineffective. *Jose P.,* No. 79 C 270, memorandum and order at 5–6 (May 16, 1979), *aff'd,* 669 F.2d 865 (2d Cir.1982).

The *Jose P.* class could assert its state claims pursuant to 8 New York Codes, Rules and Regulations (N.Y.C.R.R.) § 275.-2(a). *See, e.g., Riley Reid, supra; Kathy Kelly, supra.* The court need not decide the question of United Cerebral Palsy's standing because defendants have withdrawn their objections to it. *United Cerebral Palsy,* No. 79 C 560, consolidated judgment at 5 (1980).

■ If plaintiffs' state law claims alone were viable, the court would exercise its discretion to retain jurisdiction. The judgment has been in effect for three years. This court has spent considerable time on the case. The state claims are closely related to federal policies in various ways, the most important of which is the State's evident intention that its laws be interpreted

so as to assure compliance with federal funding statutes. This case therefore presents such circumstances as would justify retention of the state claims. *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176, 1180 & n. 4 (2d Cir.1974).

The fact that the judgment in its most important respects serves to enforce state as well as federal rights takes much of the force from City Defendants' charge that the judgment and the plans "represent an unjustified intrusion into management of the local educational system." The court presumes that the clear mandates of the State Education Law and its implementing regulations reflect state policies that are seriously expressed and intended to be enforced so as to meet federal standards. If the State repeals or modifies such provisions, at the City Defendants' behest or otherwise, the parties may bring the court's attention to that action and request reconsideration of the corresponding provisions of the judgment.

## II

The City Defendants argue that they have achieved "virtual compliance" with what they term the "central goal" of the judgment and that therefore the court should vacate it. Plaintiffs contend that even given the premise, it would be premature to accord relief under Rule 60(b). It is unnecessary, however, to consider what period of compliance would satisfy that rule, for compliance has not yet been achieved even in the respects which the City Defendants assert.

## A

City Defendants' specific contention is that their actions "have, for the first time, resulted in the virtual elimination of the evaluation and waiting lists as of the Fall 1982 school term." At oral argument City Defendants rephrased this contention to say that the lists were "down to very manageable limits" or "really in very good comparative shape." Plaintiffs say that this claim is simply false in many respects and that in other respects they reasonably believe that, with discovery, they can show it to be false.

i

Plaintiffs contend that the evaluation waiting list still exists and that the City Defendants have attempted to make it disappear on paper in a variety of ways. Their primary technique, according to plaintiffs, is to adopt a definition of the term "referral" different from that embodied in the state regulations and judgment.

Under paragraph 3(b) of the judgment, after April 15, 1981 the City Defendants must evaluate each child "referred" within 30 days of "written notification" that the child may have a handicapping condition and be in need of special education and related services. Under paragraph 4(b) such "written notification" is defined to mean a "written communication by an individual authorized to make a referral under applicable law" to the principal or assistant principal, teacher, the committee on the handicapped, a special education official, or other official designated by the City Defendants. The pertinent state regulation, 8 N.Y.C.R.R. § 200.4 provides, in pertinent part, that a "referral" may be made by among others, "a professional staff member" of the district or school.

In their papers the City Defendants say that this regulation only "arguably" means that a "teacher" may make a referral and have interpreted the language to preclude a teacher from doing so. The City Defendants now treat as a "referred" student only one for whom parental consent has been obtained.

The language of the regulation is clear, and the interpretation of the City Defendants is wholly unjustified. If "paraprofessional" means a "teacher aide" or a "teacher assistant," 8 N.Y.C.R.R. § 200.1(x), surely a "teacher" on the staff of a school district is a "professional" staff member of that district within the meaning of 8 N.Y.C.R.R. § 200.4.

Although at the time of the entry of the judgment and until last summer, teachers made a majority of referrals for evaluation, the teachers now are no longer permitted to

do so. They can merely send a form to the principal requesting, as City Defendants put it, "consultation from the SBST [School Based Support Team] on the child's needs." If the principal approves he sends the form on to the Division of Special Education. An SBST member reviews the form and determines what action to take. According to the City Defendants, this action may range from oral consultations in instances the SBST member determines there is no need for even an informal assessment "through an immediate contact with the parent to obtain consent for formal evaluation." The 30 day period is then deemed by City Defendants to run from the date consent to evaluation is given.

City Defendants point to language in paragraph 60 of the judgment reciting that the January Plan "accepted by the court shall become part of a modified judgment," and say that their new procedure is in accordance with the January Plan, which they argue "modified" the 30 and 60 day time limits. The language in the January Plan on which City Defendants rely refers to the roles, responsibilities and procedures of SBSTs and recites:

> The members of the team will determine a child's special needs and seek to meet those needs through modification of existing educational approaches or through other solutions within the regular educational program. When such supportive approaches are insufficient to meet the child's particular needs, the SBST and the parents of the child will meet to determine whether a formal assessment is required. If it is deemed necessary, an assessment will be conducted at the school by members of the team. (¶ 52(a).)

The City Defendants say that this system of "informal assessment" is aimed at considering whether additional efforts should be made to help the student without a referral for evaluation, and that such informal assessment may make it impossible to meet the 30 day period between the date of referral by a teacher and an "evaluation."

As plaintiffs agree, it may be a sensible objective to conduct informal assessments in some instances. Moreover, one can conceive of occasions when, even assuming the *bona fides* of the City Defendants, informal assessments might result in failure to comply with the state regulations, 8 N.Y.C.R.R. § 200.4(a)(1) and .4(c), and the terms of the judgment, which clearly require an evaluation within thirty days. But the City Defendants have shown no necessary inconsistency between a procedure of informal assessment and the accomplishment of an evaluation within thirty days of referral. In addition, it was not until this past summer that City Defendants, apparently advised by their lawyers, made this new and unilateral interpretation of the judgment, quite contrary to the previous practice of the parties.

If in some cases an inconsistency between informal assessment and the 30 day period proves to be inescapable, perhaps the City Defendants can persuade the State to make appropriate amendments to its regulations. If the State did so, it would undoubtedly wish to take into account concerns expressed by the plaintiffs, namely, long delays between the original referral by the teacher and the receipt of forms by the SBST and lengthy periods during which the SBST retains the referral forms before proceeding with an evaluation. These are matters which seem readily susceptible of solution if all parties focus upon them with the good faith manifested in the formulation of the judgment.

Certainly from the undisputed facts before the court the City Defendants have not complied with the time limits for evaluations set forth in the judgment and the state regulations.

The plaintiffs say that in any event the evaluations which have been made during the summer months have been of poor quality and incomplete and that these poor evaluations will lead to improper placements, thus causing referrals for reevaluations and a subsequent increase in the waiting lists. Whether this contention is valid is not now susceptible of a decision on the papers before the court. Moreover, this court is now hardly well equipped to make decisions as

to the quality of evaluations. These determinations are more appropriately made, at least in the first instance, by the State, which has the responsibility of supervising the City Defendants. Of course, this court is available to consider any request by the State for enforcement of its directives designed to bring about compliance with the judgment.

ii

The City Defendants' claim that they have eliminated the placement waiting list and have placed all students within sixty days of referral is, of course, based on the City Defendants' definition of "referral" discussed above. Under paragraph 3(b) of the judgment, for students "found in need of special education or related services, defendants are required to arrange a placement in an appropriate education program and related services, including transportation as needed, within thirty days of evaluation or sixty days of referral, whichever is shorter." Moreover, the state regulations, 8 N.Y.C.R.R. § 200.4(d), provide that within thirty days of the receipt of the recommendations of an individualized education program (IEP) from the committee on the handicapped, the City Defendants "shall provide appropriate special programs and services." Plainly if the evaluation is late, the placement may be correspondingly late.

Plaintiffs also contend that the City Defendants are using an incorrect definition of "placement" in determining the waiting list. According to the plaintiffs, the City Defendants consider students to be "placed" whenever an offer of a site or particular class is made to a student even if (1) the class is not available at all or is not available for some period of time, or (2) the child is not offered needed transportation to reach the class. In part this condition results, say the plaintiffs, from the fact that in general the City Defendants will not create a new class until about 90% of the maximum number of students the class could serve are individually identified and each identified student is discounted by the average no-show rate for that type of class in that district. Once the class is opened all the identified students are taken off the waiting list, and students are offered places that do not exist when the offer is made. Moreover, overbooking results in lack of seats for those to whom offers were made and who were taken off the waiting list. In addition, plaintiffs contend that failure to arrange transportation often makes sites illusory in existing classes, pointing to cases where students have been taken off the list but for a period of months have not received transportation to permit them to take advantage of the offer.

The response of the City Defendants seems to be that the instances to which plaintiffs refer are few in number and that it "is impossible to guarantee that every child referred as possibly in need of special education services will be served within sixty days or that some children will not slip through a crack in the administrative process." The City Defendants state that new classes are opened "when students can be appropriately grouped together," and where there are not enough students to form such a new class and "where a student can be most appropriately served by being placed in a class that is filled to the limit prescribed in state regulations, or in a class in which the student would be outside the permissible age range," the City Defendants will seek a variance from the State, presumably to permit placement of the student in one of these kinds of classes.

It is not clear to the court from the papers before it whether these problems raised by plaintiff are systemic and affect large numbers of students or involve an occasional student whose rights may be pursued on an individual basis through the administrative machinery. This matter should be considered in the hearings directed in Part VI, *infra*.

B

The City Defendants' compliance argument is based on the idea that this case is "about" the "core issues" of timely initial evaluation and placement. In some sense, as to the *Jose P.* plaintiffs, there is support for that assertion. The *Jose P.* class was

certified to include "all handicapped children between the ages of five and twenty-one living in New York City whom the Board has been notified, pursuant to 8 N.Y.C.R.R. § 200.5(d), may be handicapped and who have not been evaluated within thirty days or placed within sixty days of such notification." *Jose P.*, No. 79 C 270, memorandum and order at 7 (May 16, 1979). The court has characterized the *Jose P.* action as one to ensure prompt evaluation and placement. *See United Cerebral Palsy,* No. 79 C 560, memorandum and order at 9 (Aug. 10, 1979).

However, in the *United Cerebral Palsy* order, *id.*, the court went on to detail the plaintiffs' assertion "that their claims go beyond what they term the 'waiting list' problem in *Jose P.* and involve critical structural problems in existing special educational programs and related services." Even if United Cerebral Palsy can assert the rights of only children with certain handicaps, the *Jose P.* class can assert the rights of . others. The fact that the class consists of children on waiting lists does not gainsay their interest in the adequacy of the free appropriate public education they are to receive. If plaintiffs need a pleading to support the judgment as to issues other than waiting lists, they have it in the *United Cerebral Palsy* complaint, which satisfies the relevant policies of notice.

Thus no consequences follow from the fact that the *Jose P.* case, when filed, was "about" waiting lists. It is now "about" everything in the judgment, and as to many of those things City Defendants do not even suggest that they are in compliance. Two examples will suffice.

Plaintiffs say that the City Defendants have not met their obligations under the judgment to perform "triennial evaluations," and that there is a large backlog of these reevaluations. Paragraph 5 of the judgment provides:

"Defendants have the responsibility under federal and New York law to have appropriate staff conduct annual reviews and triennial reevaluations of all students placed in special education programs or receiving related services."

The City Defendants respond that the "most pressing triennial evaluations, those occasioned by a special education teacher's or parent's request for re-evaluation have been regularly conducted." However, the pertinent federal regulations, 34 C.F.R. § 300.534, provide that the state and the local educational agency shall insure that "an evaluation of the child" based on specified procedures, "is conducted every three years or more frequently if conditions warrant or if the child's parent or teacher requests an evaluation." The City Defendants do not urge, nor could they urge successfully, that this regulation means that triennial evaluations are required only if a request is made by the parent or teacher. The language of the regulation clearly requires triennial evaluations which the City Defendants admittedly have not conducted. The extent of the backlog is suggested by Special Master's Report No. 11 at 9–10 (Aug. 27, 1982).

The City Defendants' papers do not appear to address the contention of plaintiffs that the City Defendants have not eliminated the waiting list for related services. As noted above, paragraph 3(b) of the judgment and 8 N.Y.C.R.R. § 200.4(d) requires timely provision of such related services. The City Defendants have stated that they are making "every effort" to "identify and serve all students in need of related services." The size of the shortfall is not clear, especially given the inadequacy of large numbers of IEPs. But such data as City Defendants have provided show that thousands of students await counseling and other related services. Periodic Report, November 1982; Related Services Survey at 1. Clearly, therefore, the City Defendants have not complied with their obligation to meet the time limits for the rendition of related services.

C

The remedies for the failure of City Defendants to comply with the judgment will be discussed in part VI of this memorandum and order.

## III

The City Defendants seek in the alternative a modification of the judgment, contending that it imposes detailed obligations not required by federal or state law, eliminates "all discretion to implement new procedures, or modify unsuccessful approaches," and diverts "a large portion" of administrative time from educational issues to litigation. The City Defendants also now complain of the "suffocating detail" of the so-called January and April Plans prepared and submitted by them.

The City Defendants point to certain specific respects in which the judgment is now deemed by them to be inappropriate. Paragraph 34 of the judgment provides, in substance, that whenever the vacancy rate in an area is 15% or less defendants shall secure space and hire teachers to meet the requirements of timely and appropriate placement. This provision, according to City Defendants, "has not proved helpful" and indeed "has never been fully implemented anywhere in the school system."

Paragraphs 16 through 19 of the judgment and the January Plan provide for the establishment of the SBSTs to conduct evaluations. The City Defendants apparently do not suggest that the SBSTs be eliminated, but say that such a method of evaluation "has been and will continue to be viewed as a trial method" and that they should be free to test a variety of effective means to evaluate children. Further, City Defendants say that fixing the specific membership of the evaluation teams and their respective tasks removes administrative discretion to change evaluation techniques in order to improve services. The City Defendants suggest no specific changes now but simply seek to be free to alter staffing priorities in the future.

City Defendants object to other specific provisions in the judgment, for example, paragraph 27 requiring at least one professional educator on the staff of each district committee on the handicapped familiar with the special education programs available, paragraph 58 providing that the January Plan shall include mechanisms for the

City Defendants to meet with representatives of nonpublic schools, paragraphs 10 and 11 providing for the staffing of outreach offices, paragraphs 41 through 50 relating to periodic reports, and paragraphs 70 through 80 relating to management information systems.

City Defendants also ask the court to vacate or modify its orders dated January 11, 1982 and July 2, 1982 authorizing parents of children who had not received timely evaluations or placements unilaterally to obtain evaluations or enroll their children in appropriate programs.

The court's judgment in this case and the plans filed by the City Defendants came at the end of many years of failure by them to meet their obligations under state and federal law despite repeated efforts by the State and individuals to require City Defendants to fulfill those obligations. Quite plainly the City Defendants have not complied either with the judgment or with the pertinent federal and state regulations.

The City Defendants have not set forth in their papers plans in place of those they earlier formulated to comply with federal and state laws and regulations. In the absence of such alternatives, or of amendment of the federal and state laws or regulations, the court sees no reason to amend the judgment.

The history of over a decade of failure to accord the handicapped their rights, together with the advancement of an argument (based on what can be described, charitably, as a clever misreading of a state regulation, the judgment and the January Plan) that the City Defendants have eliminated the waiting lists, hardly inspires confidence that they would meet their obligations were the judgment to be modified to eliminate everything except an admonition to do their duty.

## IV

The court has before it Special Master's Reports Numbers 11 and 12. Report No. 11 recommended that the City Defendants employ the personnel necessary to create 150

more SBSTs. Report No. 12 pointed out that the City Defendants "may not continue any practice or procedure under which they deliberately and systematically fail to place handicapped children in compliance with the judgment," and recommended entry of a broad order stating, in substance, that the City Defendants and their agents and successors are to do what is needed to comply with the requirements of the judgment for placement of handicapped children within thirty days of evaluation or sixty days of referral, whichever is shorter, and to give notice of the order to those responsible for compliance.

■ The court has considered carefully the arguments with respect to the staffing of additional SBSTs and has concluded that it should not add further detail to the judgment in order to obtain compliance by the City Defendants. The City Defendants and their personnel are well aware of the terms of the judgment and their duty to meet their federal and state obligations. At one time the City Defendants agreed as to the means whereby that duty would be met. This court will not undertake to prescribe additional specifics at this time. Rather, the court has directed the City Defendants to do what the law requires of them. To the extent that they have failed, or fail in the future, to conform to the law and the judgment, they are subject to contempt proceedings and consequent sanctions.

Report No. 12 seems to the court wholly sound and justified, but the court believes its recommendations are embodied in the judgment. In the light of this memorandum and order the City Defendants and their agents and employees can be in no doubt as to the consequences if they continue to flout that judgment. The court therefore sees no need to supplement it.

Nor would it serve a purpose to order that City Defendants "create a class wherever one is needed to avoid a violation of the judgment," as requested by plaintiffs. For the court to reiterate defendants' obligations would not serve to make those obligations any more binding. The same is true of defendants' obligations under the April Plan, Judgment ¶ 69, but on the present record, the court declines to hold, as plaintiffs urge, that use of "per session" resource room teachers is impermissible except when unavoidable.

V

The plaintiffs seek appointment of a new special master together with an independent data consultant to enable the master effectively to monitor compliance. Special Master Frankel rendered distinguished and effective service in obtaining acquiescence in the terms of a judgment and in assisting the parties to agree on the means of attaining its objectives. Now that the judgment has been in effect for some time, it is appropriate to determine the extent to which the City Defendants have violated the judgment and what sanctions should be imposed to bring about compliance. The court appoints Magistrate John Caden as a Special Master to hear and report on these matters.

The City Defendants assert that they have approved a contract with a vendor consultant in the field of data processing. To appoint a separate data consultant to assist the court would imply that this court has the responsibility of supervising the City's education program for the handicapped. That is not this court's task. As noted above, the present function of the court is to order the City Defendants to comply with the law. The State has the duty of supervision. The court is encouraged to note that the State has able people on its staff. They appear interested in assisting handicapped children to obtain an education. The State has the personnel and the facilities to supervise the City Defendants, to adopt regulations setting forth the details of the steps the City Defendants should take to meet their statutory obligations, and to bring to the attention of the court violations of the judgment as it presently stands and recommendations for amendments to embody additional State regulations designed to require compliance with the objectives of the judgment.

Such an active role on the part of the State in assisting in the enforcement of the judgment will, of course, make it reasonable for this court to reassess the allocations of costs and expenses among the defendants.

## VI

There is also pending before the court plaintiffs' motion which they style an application for "further relief." Plaintiffs alleged in February 1982 before the Special Master substantial noncompliance with various provisions of the judgment. The Special Master indicated that, unless these matters were resolved by negotiations, hearings would be held on them after completion of the matters dealt with in Special Master's Reports 11 and 12. Because of Special Master Frankel's resignation these hearings have not yet been held.

As to certain issues, the waiting lists for evaluations and placements and triennial reevaluations, the record is sufficient to make a limited finding. City Defendants' failure to comply with the judgment on these issues is manifest and extensive. Defendants have not raised a claim of inability to comply. The court finds that the City Defendants have violated the judgment as to those issues in such a way as to warrant measures calculated to obtain compliance. Further evidence and argument is needed to determine the degree of responsibility of the various City Defendants and their agents and employees and the appropriate sanctions to be imposed. As to other issues, the court would benefit from a fuller development of the record on the question of violations as well as means to secure adherence to the judgment.

These matters are referred to Magistrate John Caden to hear and report with all appropriate dispatch. Magistrate Caden shall make findings as to the extent to which City Defendants and their agents are now in contempt of this court's judgment and shall recommend what measures should be imposed on City Defendants, and on which employees and agents of City Defendants, so as to bring about compliance.

Magistrate Caden should take up the matters in some rational order of priority. The court suggests that Magistrate Caden proceed with hearings first with respect to those matters which are most susceptible of objective determinations, namely, (1) the extent of and responsibility for noncompliance with timeliness requirements for evaluation and placement, (2) the formal regularity of IEPs, (3) the creation of the management information systems provided for in ¶¶ 70–82 of the judgment, (4) the provision of related services, (5) due process protections and language guarantees for parents, (6) triennial reevaluations, (7) specialized equipment, and (8) facilities accessibility. If after consultation with the parties, including the State, Magistrate Caden deems it appropriate to adopt different priorities concerning any matter as to which plaintiffs or the State contend the City Defendants are in violation of the judgment, he may do so.

Some of plaintiffs' claims are more susceptible to the process of compliance hearings than are others. The court does not agree with City Defendants that under the *Rowley* case, the Education for Handicapped Act creates substantive rights only to "access" and not "quality." On the other hand, it is clear, and the *Rowley* case illustrates, that "quality" or "programmatic" issues are less yielding to judicial determination.

It may be that less can be expected of hearings and sanctions as remedies for problems in areas such as mainstreaming and the continuum of programs and services, and perhaps staffing ratios and certain aspects of programs for hard-to-place children. Plaintiffs are free to seek sanctions as to any issue—the court does not purport to be sufficiently well informed on these issues for its illustrations of this distinction to be taken as binding—but as plaintiffs seemed to acknowledge at oral argument, some matters involve so much uncertainty even among experts that negotiation may well be a more fruitful approach.

## VII

The motions to vacate or amend the judgment and the orders implementing it are denied. Report Number 11 of the Special Master is not adopted. Magistrate John Caden is appointed a Special Master pursuant to 28 U.S.C. § 636(b)(2) and F.R.C.P. 53. To the extent necessary to perform his duties pursuant to this memorandum and order Magistrate Caden shall have all the powers set forth in this court's order of June 9, 1979. The application to hold City Defendants in civil contempt is referred to him to hear and report in accordance with this memorandum and order. The application for appointment of an independent data consultant is denied.

So ordered.