**Larry MIHALCIK, et al.**

v.

**Brian R. LENSINK, et al.**

**Civ. No. H–89–529 (PCD).**

United States District Court,
D. Connecticut.

March 9, 1990.

J.L. Pottenger, Jr., Stephen Wizner, Mary McCarthy, Jean Koh Peters, and Jerome N. Frank, Legal Services Organization, New Haven, Conn., for plaintiffs.

Patricia A. Gerner, Paul J. Lahey, James P. Welsh, Asst. Attys. Gen., Hartford, Conn., and Carl J. Schuman, Asst. U.S. Atty., New Haven, Conn., for defendants.

## RULING ON MOTIONS TO DISMISS

DORSEY, District Judge.

Plaintiffs, two current Connecticut Valley Hospital ("CVH") patients, sue "on behalf of all persons with mental retardation who are, were, or in the future will be patients at CVH," a state mental institution located in Middletown. Amended Complaint, ¶ 1. Plaintiffs' motion for class certification has been stayed pending resolution of defendants' motions to dismiss. Plaintiffs allege violations of Section 123(a) of the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 6023(a), and their Fourteenth Amendment rights to substantive due process and equal protection.

Defendants are Brian R. Lensink, the Commissioner of the Connecticut Department of Mental Retardation ("DMR"), individually and in his official capacity; Michael F. Hogan, Commissioner of the Connecticut Department of Mental Health ("DMH"), individually and in his official capacity; and Louis W. Sullivan, M.D., Secretary of the United States Department of Health and Human Services, in his official capacity only. Defendants Lensink and Hogan have moved to dismiss plaintiffs' amended complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P. Since the motions are identical in nearly all respects, this ruling will address both.

### Facts

The following facts are alleged in plaintiffs' amended complaint and are taken as true for the purposes of the motions at bar. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

Larry Mihalcik is twenty-eight with a diagnosis of moderate mental retardation with behavioral symptoms. He has been a patient at CVH for ten years. Prior to his commitment, he was able to feed, dress and bathe himself. Since his confinement, hospital reviews allegedly document a profound decrease in overall functioning. Moreover, it is alleged that Mr. Mihalcik has been repeatedly subjected to physical and chemical restraints and placed in seclusion.

In June 1988, an interdisciplinary team from DMR and DMH recommended that Mr. Mihalcik be placed in a group home and that he be taught basic living skills. The Middletown Probate Court, in January 1989, found that Mr. Mihalcik was in immediate need of a structured behavioral program and ordered him to an appropriate residential placement. To date, that order had not been obeyed.

Audrey Bell is thirty-seven and has been a resident of CVH for 18 years. Ms. Bell is diagnosed as autistic, retarded and non-verbal. Staff recommendations, including communication therapists or behavior modification strategies have never been implemented, and to date no social worker or recreational therapist was assigned to Ms. Bell's ward. Until 1988, no case management services were provided for Ms. Bell

by the DMR. She is currently on the case load of a DMR worker.

After finding that Ms. Bell's placement at CVH was inappropriate, in October of 1988, the Middletown Probate Court ordered Ms. Bell's immediate placement in a community setting. In February 1989, DMR reported that Ms. Bell would not receive community placement in fiscal 1989 or 1990. To date DMR had not obeyed the Probate Court order.

## I.

■ The state defendants argue that plaintiffs fail to state claims against them under 42 U.S.C. § 1983 absent allegations of any specific acts or omissions of the defendant Commissioners. Defendants contend that there is no claim they knew the plaintiffs nor that they were personally involved in the treatment decisions.

A claim under § 1983 requires allegations of defendants' personal involvement in the violations. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). *Respondeat superior* does not suffice and a plaintiff must show some personal responsibility as to each defendant. *Duchesne v. Sugarman*, 566 F.2d 817, 830 (2d Cir.1977). The complaint cannot rely on broad and conclusory allegations but must contain "specific allegations of fact which indicate a deprivation of constitutional rights." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987) (a defendant must be personally involved in the alleged deprivation to be held liable).

Personal involvement can be shown: (1) by direct participation in the alleged deprivation; (2) by failing to remedy a violation after learning of it; (3) by creating an unconstitutional policy, practice or custom or allowing such to continue; or (4) by being grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams*, 781 F.2d at 323–24 (citations omitted).

Plaintiffs' amended complaint includes detailed factual allegations which adequately meet the pleading requirements of personal involvement outlined in *Williams v. Smith*. Plaintiffs assert that they are subject to unsafe conditions and undue restraint and that their basic living skills have deteriorated. They have also alleged that defendants had knowledge of the conditions under which they lived and took no action to remedy those conditions. Furthermore, plaintiffs have alleged facts which may show that defendants have promoted unconstitutional practices, including physical and chemical restraint, failure to implement professional judgment with regard to plaintiffs' placements and recommended services, and the failure to provide plaintiffs with individual treatment plans ("ITP"). The complaint, read broadly and with all reasonable inferences drawn in plaintiffs' favor, would reasonably permit an inference that defendants, as Commissioners, had sufficient knowledge of, created, acquiesced in, or have, are or will fail to correct or prevent the alleged constitutional deprivations so as to be personally involved for § 1983 purposes.

In reviewing a complaint in the face of a motion to dismiss, "the issue is not whether the plaintiff will prevail on the merits but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The question of defendants' personal involvement in alleged § 1983 violations turns on factual determinations. *Williams*, 781 F.2d at 323. Defendants are not entitled to dismissal.

## II.

Defendants contend that the amended complaint fails to allege the necessary state-of-mind requirements for the asserted constitutional violations. The particular state-of-mind requirement depends on the specific constitutional right the plaintiff claims the defendant violated.

### A. *Equal Protection claim*

■ In Count V, plaintiffs allege a failure to have ITPs in effect or to provide plaintiffs with services consistent with such plans while others similarly situated are provided with services in accordance

with an ITP. Denial of such services is alleged to have no rational basis and thus violates the equal protection clause. Defendants argue that this count fails to allege intentional discrimination.

An equal protection claim requires a showing that he or she has been the victim of intentional discrimination. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Supreme Court, in *Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), described the requisite discriminatory purpose as "more than intent as volition or intent as awareness of consequences. It implies that the decision maker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 279, 99 S.Ct. at 2296. Proof of discriminatory intent "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977).

"The first step in any equal protection claim is to establish that a recognizable, distinct class is 'singled out for different treatment under the laws as written or as applied.'" *Gann v. Schramm*, 606 F.Supp. 1442, 1447 (D.Del.1985), quoting *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977). The classification need not be racially based—the equal protection clause may be applied to strike down any classification "not rationally related to a legitimate government purpose." *Thurman v. City of Torrington*, 595 F.Supp. 1521, 1526 (D.Conn.1984). Plaintiffs must allege that they were and are the victims of purposeful discrimination, either because of membership in a protected class or due to irrational or arbitrary classification unrelated to legitimate state objectives. *See, e.g.,*

*Sherrell v. City of Longview*, 683 F.Supp. 1108, 1116 (E.D. Tex.1987).

Plaintiffs allege defendants' authority with respect to plaintiffs programming, that they knew plaintiffs were not and are not being treated in accordance with ITPs although others with mental retardation, who are not confined in mental hospitals, receive services pursuant to ITPs. Plaintiffs claim that defendants have no rational basis for the failure to provide appropriate services to persons with mental retardation at CVH. Whether the state defendants, who are alleged to have the authority to provide services in accordance with ITPS, acted with a level of discriminatory purpose necessary to constitute a violation of the equal protection clause cannot be decided on the face of the pleadings. Defendants' motions to dismiss plaintiffs' equal protection claims are denied because defendants have not shown that plaintiffs will not be able to prove facts to support this claim.

### B. *Due Process claim*

■ The state defendants also challenge plaintiffs' substantive due process claim arguing that the amended complaint fails to allege that they acted recklessly, with deliberate indifference [1], or intentionally to deprive them of their liberty interests. The court finds defendants arguments as to this point to be without merit and the cases cited in support of their position to be inapposite.

In *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court held that mentally retarded individuals confined to a state institution had a constitutionally protected liberty interest in conditions of reasonable care and safety, freedom from unreasonable bodily restraint, as well as such minimally adequate training that will ensure these interests. *Id.* at 324, 102 S.Ct. at 2462. The proper standard for determining whether

---

1. The Supreme Court in *Youngberg v. Romeo* held that it was error to apply the deliberate indifference standard developed under the Eighth Amendment when considering the due process rights of retarded persons involuntarily committed. 457 U.S. at 312 n. 11, 102 S.Ct. at 2456 n. 11. Such persons are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions are designed to punish." *Id.* at 322, 102 S.Ct. at 2461, citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

the state has adequately protected such rights is whether "professional judgment has been exercised." *Id.* at 321, 102 S.Ct. at 2461. "[L]iability may be imposed only when the decision by a professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323, 102 S.Ct. at 2462. "Plaintiffs have the constitutional right to minimally adequate habilitation ... which will *tend* to render unnecessary the use of chemical restraint, shackles, solitary confinement, locked wards, or prolonged isolation from one's normal community." *Thomas S. by Brooks v. Flaherty,* 699 F.Supp. 1178, 1200–01 (W.D.N.C.1988). They also have "a constitutional right to habilitation which is minimally adequate to *maintain* basic self-care skills." *Id.* at 1201; *see also Youngberg,* 457 U.S. at 327, 102 S.Ct. at 2464 ("such training as is reasonably necessary to prevent a person's pre-existing self-care skills from deteriorating"). The question is "not what treatment was actually provided, but whether the treatment decision was professionally made and falls within the scope of professional acceptability." *Woe v. Cuomo,* 729 F.2d 96, 105 (2d Cir.), *cert. denied,* 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984).

Plaintiffs have specifically alleged the state defendants' knowledge of the needs of the individual plaintiffs as evidenced by recommendations of professionals at CVH as well as by the Probate Court's orders. Defendants' failure to act, based on professional judgment, in light of this evidence allegedly resulted in the denial of plaintiffs' due process rights to receive training which will ensure their safety, freedom from undue restraint and prevent the deterioration of basic self-care skills.

Although the decisions of professionals are "presumptively valid", *Youngberg,* 457 U.S. at 323, 102 S.Ct. at 2462, defendants have not shown, from the face of the amended complaint, that plaintiffs can prove no facts to support their claim that defendants failed to exercise their professional judgment. Therefore, defendants'

motions to dismiss plaintiffs' due process claims are denied.

III.

■ Defendants next move to dismiss Count III which alleges that the state defendants violated Section 123(a) of the Developmental Disability Act ("DDA"), 42 U.S.C. § 6023(a), which conditions the receipt of federal funding on the development of individual habilitation plans for persons who receive treatment through programs funded by DDA money. Defendants contend that the DDA does not create rights enforceable by a developmentally disabled individual in a § 1983 action and that, moreover, neither the DMR nor the DMH receive funds under the DDA.

In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that § 1983 provides a mechanism to enforce violations of federal statutes as well as constitutional violations. Two exceptions have developed to the general rule. The first exception is that no action under § 1983 is available if Congress did not intend the statute in question to create individually enforceable rights. *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) ("*Pennhurst I* "). Secondly, if Congress creates exclusive remedies for the enforcement of a statute, private enforcement under § 1983 is precluded. *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). "[I]f there is a state deprivation of a 'right' secured by a federal statute, § 1983 provides a remedial cause of action unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Wright v. Roanoke Redevelopment & Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 776, 93 L.Ed.2d 781 (1987).

The Supreme Court addressed the issue of whether there is a § 1983 action based on alleged violations of the DDA in *Pennhurst I.* In that case, mentally retarded residents of a Pennsylvania hospital brought suit under the "Bill of Rights" provision of the DDA, 42 U.S.C. §§ 6010(1)

and (2) [recodified at 42 U.S.C. §§ 6009(1) and (2)] which states that developmentally disabled persons "have a right to appropriate treatment, services, and habilitation" provided "in the setting that is least restrictive of the person's personal liberty."

Plaintiffs were held to have no cause of action under § 6010 of the DDA which did not create substantive rights but was a statement of "findings" and expressed a Congressional preference for certain treatment. *Pennhurst I*, 451 U.S. at 19, 101 S.Ct. at 1541. The Court carefully distinguished between the DDA's Bill of Rights section (§ 6010), cited by the *Pennhurst I* plaintiffs, and its funding sections (§ 6011, now § 6023, cited by the plaintiffs here, and § 6012). "When Congress intended to impose conditions on the grant of federal funds, as in §§ ... 6011 [and] 6012 ..., it proved capable of doing so in clear terms." *Id.* at 23, 101 S.Ct. at 1543. In marked contrast to the DDA's funding sections, § 6010 does not contain language suggesting that it is a condition on the receipt of federal funds. *Id.* at 13, 101 S.Ct. at 1537. Rather, § 6010 illustrates the congressional "distinction between 'encouragement' of state programs and the imposition of binding obligations on the states." *Id.* at 27, 101 S.Ct. at 1545.

Contrary to the contention of the state defendants here, the Supreme Court did not preclude the possibility of statutory liability arising from violations of other sections of the DDA. The district court in *Jose P. v. Ambach*, 557 F.Supp. 1230, 1234 (E.D.N.Y.1983), noted that the Supreme Court in *Pennhurst I* "assumed ... that the statute's express conditions on funding created substantive rights." Likewise the district court in *Gieseking v. Schafer*, 672 F.Supp. 1249, 1260 (W.D.Mo.1987), held that Congress intended to create "rights", enforceable under § 1983, in developmentally disabled individuals as to the express conditions on the receipt of federal funds in § 6023(a). Rather than merely providing the states with assistance for habilitation services, Congress was noted to have expressly conditioned the receipt of funds on the existence of a system of protection and advocacy of the rights of the developmen-

tally disabled. *Id.* at 1259. Such a provision illustrated Congress' contemplation of enforcement of the rights of persons receiving treatment. *Id.*

No evidence that Congress intended to create exclusive remedies within the statute, and thus bar a § 1983 action, has been found or cited. Unlike the enforcement scheme in *Middlesex County Sewerage Authority v. National Sea Clammers*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), DDA does not authorize enforcement suits by government officials or private citizens. "[T]he [DDA] does not provide any enforcement provision for private parties." *Gieseking*, 672 F.Supp. at 1261. As plaintiffs' claim against the state defendants under the DDA does not fall within either exception to the general rule in *Maine v. Thiboutot*, plaintiffs are entitled to maintain their claim for the alleged deprivation of their substantive rights secured by the DDA.

■ Defendants also contend that Count III fails to state a claim because neither the DMR nor the DMH receive funds under DDA and therefore cannot be held responsible under § 6023(a) of DDA which applies to each program "which receives funds under the states allotment." Defendants thus have converted their motions to dismiss, in part into motions for summary judgment under Fed.R.Civ.P. 56(b) attaching an affidavit alleging certain facts. The court's function in considering a motion for summary judgment is only to determine whether a question of material fact exists which requires a full trial. *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975).

■ The affidavit of the Director of the State Planning Council on Developmental Disabilities, the administrative body responsible for the disbursement of the state's allotment under DDA, states that there are presently no programs of either the DMR or the DMH that are receiving funds under the DDA. Plaintiffs' opposing affidavit indicates that the DMR may have received funding within the last two years under the DDA and that both the DMR and

the DMH may receive DDA funds for "case management" in 1990 and 1991. *See Gieseking*, 672 F.Supp. at 1254.

Plaintiffs here have requested damages in compensation for past violations of their rights, as well as injunctive relief against future violations. On the basis of the pleadings and affidavits presented, summary judgment cannot be granted because an issue of material fact exists concerning past and future allocations of DDA funds to both the DMR and DMH which cannot be resolved without further development of the record.

### IV.

Defendants next assert that plaintiffs claims under § 1983 for acts prior to August 15, 1987 are barred by the statute of limitations.

As clarified by the Supreme Court in *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), the applicable statute of limitations for a § 1983 action for personal injuries is the general or residual statute of the appropriate state. In this action, defendant accurately notes and plaintiffs agree that under Connecticut Law, Conn.Gen.Stat. § 52–584, plaintiffs' claims for damages are restricted to acts subsequent to August 15, 1987.

### V.

■ Finally, defendants claim that plaintiffs' § 1983 claims for damages are barred by the Eleventh Amendment.

The Eleventh Amendment prohibits suits against the state by its own citizens as well as non-residents seeking a retroactive award which requires payment of funds from the state treasury. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974); *McClary v. O'Hare*, 786 F.2d 83, 89 (2d Cir.1986). Suit against a public servant in his official capacity imposes liability on the state and thus the state itself is the real party in interest. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). While Congress can abrogate the protections of the Eleventh Amendment, no such authorization is found in § 1983. *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir.1986), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987).

The immunity granted in the Eleventh Amendment does not extend, however, to state officers sued for damages in their individual capacity. While plaintiffs' damage claims against the state officials in their official capacity are barred, the Eleventh Amendment immunity does not constitute grounds for dismissal of the damage claims brought against the state defendants in their individual capacities.

### Summary

1. Defendants' Motions to Dismiss plaintiffs' claims for failure to state claims under § 1983 and the Developmental Disabilities Act, 42 U.S.C. § 6023(a) are denied.

2. Defendants' Motions to Dismiss are granted with respect to plaintiffs' claims for damages under § 1983 for acts prior to August 15, 1987 which are barred by the statute of limitations.

3. Defendants' Motions to Dismiss all damage claims against the state defendants in their official capacities is granted as such claims are barred by the defendants' Eleventh Amendment immunity.

4. Defendants shall submit any objections to plaintiffs' motion for class certification within ten days of the date of this order. Plaintiffs may respond within five days thereafter. Discovery shall be completed on or before June 29, 1990. All dispositive motions to be filed by July 27, 1990.

SO ORDERED.