JOSE P., et al., Plaintiffs-Appellees,

v.

Gordon M. AMBACH,
Defendant-Appellant-Cross-Appellee,

Frank J. Macchiarola, et al.,
Defendants-Appellees-Cross-Appellants.

UNITED CEREBRAL PALSY OF
N.Y.C., INC., et al.,
Plaintiffs-Appellees,

v.

BOARD OF EDUCATION, et al.,
Defendants-Appellees-Cross-Appellants,

Gordon M. Ambach, et al.,
Defendants-Appellants-Cross-Appellees.

DYRCIA S., et al., Plaintiffs-Appellees,

v.

BOARD OF EDUCATION, et al.,
Defendants-Appellees,

New York State Education Department,
et al., Defendants-Appellants.

Nos. 89, 312, 313, 314 and 471, Dockets
80–7053, 81–7165, 81–7263, 80–7283
and 81–7205.

United States Court of Appeals,
Second Circuit.

Argued Nov. 30, 1981.

Decided Jan. 21, 1982.

Kenneth Pawson, Albany, N. Y. (Robert D. Stone, Albany, N. Y., Atty. for Commissioner of Education, Jean M. Coon, Albany, N.Y., of counsel), for defendants-appellants-cross-appellees.

Robert Bergen, New York City (Allen G. Schwartz, Corp. Counsel, Ronald E. Sternberg, Gary R. Tarnoff, New York City, of counsel), for defendants-appellees-cross-appellants.

John C. Gray, Jr., Brooklyn, N. Y. (Harold Adler, Brooklyn Legal Services Corp., Brooklyn, N. Y., of counsel), for plaintiffs-appellees Jose P. et al.

Michael A. Rebell, New York City (Arthur R. Block, Helene M. Freeman, New York City, of counsel), for plaintiffs-appellees United Cerebral Palsy of N.Y.C., Inc., et al.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge, and CONNER,* District Judge.

OAKES, Circuit Judge:

Each of the three cases consolidated on appeal was a class action on behalf of handicapped children challenging New York state and city education authorities' failure to provide the appropriate public education required by the Education of All Handicapped Children Act (EHA), 20 U.S.C. §§ 1401–1461, section 504 of the Rehabilitation Act, 29 U.S.C. § 794, New York Education Law §§ 4401–4409, the regulations promulgated under those statutes, and the Fourteenth Amendment. More specifically, the defendants were charged with failure to evaluate and place handicapped children in appropriate programs in a timely fashion. The complaint filed by United Cerebral Palsy of New York City, Inc. (UCP), also claimed that the delays could be remedied only through appropriate structural reforms in the educational system. Plaintiffs sought injunctive and declaratory relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202, and alleged jurisdiction under 28 U.S.C. §§ 1331 and 1343.

By order dated May 16, 1979, the United States District Court for the Eastern District of New York, Eugene H. Nickerson, Judge, certified the class in *Jose P.*, held that by the defendants' own concession they had "failed to comply with the statutory requirements," and appointed former Judge Marvin Frankel special master under Fed.R. Civ.P. 53 to work out a remedy. Disposition of the *UCP* and *Dyrcia S.* cases was deferred pending the master's final report in *Jose P.*, and counsel for all three plaintiff classes then participated in the *Jose P.* proceedings. On December 14, 1979, Judge Nickerson, following the recommendation of Master Frankel, entered a judgment finding that the defendants had "violat[ed] the requirements of federal and New York law and regulations," requiring defendants to "take all actions reasonably necessary to accomplish timely evaluation and placement in appropriate programs of all children with handicapping conditions," and establishing a detailed remedial plan. Judgments identical to the one in *Jose P.* were entered in *UCP* and *Dyrcia S.* in January 1980.

Judge Nickerson also found, in orders of January 31 and May 29, 1980, that both the

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

city and the state defendants were liable for attorneys' fees to the *Jose P.* and the *UCP* plaintiffs. On December 5, 1980, the parties filed stipulations that $140,000 in *Jose P.* and $71,681.93 in *UCP* were fair and reasonable amounts for attorneys' fees, and on December 18, 1980, Judge Nickerson ordered these amounts allocated 80% against New York City and 20% against New York State, "in accordance with their relative culpability."

On the appeal brought by the New York State Commissioner of Education, the issues are whether the district court properly held that the class actions could be maintained against the Commissioner, notwithstanding plaintiffs' failure to exhaust state administrative remedies, on the ground that these remedies were inefficacious; whether the district court correctly held the Commissioner liable for failure to assure that the city school district provide appropriate education to the plaintiffs; and whether the district court's 80–20 allocation of responsibility for the attorneys' fee awards had a rational basis. We affirm.

On the cross-appeal by the New York City Chancellor, the issue is whether it was a proper exercise of the district court's discretion to allocate the responsibility for attorneys' fees between the city and the state defendants on an 80–20 basis rather than a 50–50 basis. We also affirm.

### Exhaustion of State Administrative Remedies

In the order certifying the *Jose P.* class, Judge Nickerson held that the action against the state defendants would not be barred by the named plaintiffs' failure to exhaust the administrative hearing and appeal procedure provided by the New York Education Law, stating that "the inefficacy

of the available administrative remedies has been demonstrated." In his order denying without prejudice class certification to the *UCP* plaintiffs pending proceedings in *Jose P.*, he said again that "in light of the absence of a 'meaningful administrative enforcement mechanism.' . . . this suit may be maintained without prior resort to administrative proceedings." The Commissioner argues on appeal that available administrative remedies are not inefficacious, and thus that absent their exhaustion by plaintiffs, the district court lacked jurisdiction over the state defendants.

The only administrative remedies at issue here are those provided in sections 4401 to 4404 of the New York Education Law.[1] Under the New York statutes and regulations, the parents of handicapped children may, first, refer the child to a school district's committee on the handicapped for evaluation and recommendation for placement, N.Y.Educ.Law § 4402; second, request a hearing at the school district level if dissatisfied with the committee's recommendation or with its failure to act within thirty days of referral, *id.* § 4404(1); 8 N.Y. C.R.R. § 200.5(c); and third, appeal to the Commissioner, subject to review in state court, N.Y.Educ.Law § 4404(2)–(3). Plaintiffs argued successfully below that such procedures are totally inadequate to handle the thousands of individuals in the classes awaiting suitable placement, and that the individual appeal mechanism is inappropriate to resolve the systemic compliance issues raised in the class actions. The Commissioner argues on appeal that the inadequacy of these procedures was not proved, as the court below ignored the availability of hearings before hearing officers appointed by the school district, whose numbers are in theory unlimited.

---

1. The EHA, 20 U.S.C. § 1415, requires states receiving assistance under the EHA to set up procedures including "an opportunity to present complaints" regarding the evaluation and placement of a handicapped child, *id.* § 1415(b)(1)(E), and an opportunity for an "impartial due process hearing" on that complaint before a state or local agency, *id.* § 1415(b)(2). Decisions made in such hearings are subject to

review in state courts or federal district courts. *Id.* § 1415(e)(2). The EHA itself provides no federal administrative remedies. And because plaintiffs never asserted jurisdiction under section 1415(e)(2), the extent to which the EHA imposes an exhaustion requirement is irrelevant. Nor has appellant Commissioner raised any failure to exhaust remedies under the Rehabilitation Act § 504, 29 U.S.C. § 794.

■ The Second Circuit has long held that exhaustion of state administrative remedies prior to adjudication of a section 1983 claim in federal court is not required if adequate and speedy state remedies are not available, *see, e.g., Gonzalez v. Shanker,* 533 F.2d 832, 834, 837–38 (2d Cir. 1976); *Morgan v. LaVallee,* 526 F.2d 221, 223 (2d Cir. 1975); *Blanton v. State University of New York,* 489 F.2d 377, 383–84 (2d Cir. 1973); *Eisen v. Eastman,* 421 F.2d 560, 569 (2d Cir. 1969), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970), or if the inadequacy of the state administrative remedy is "coextensive with the merits of the plaintiff's constitutional claim," *Fuentes v. Roher,* 519 F.2d 379, 387 (2d Cir. 1975); *see Barry v. Barchi,* 443 U.S. 55, 63 n.10, 99 S.Ct. 2642, 2648 n.10, 61 L.Ed.2d 365 (1979); *Gibson v. Berryhill,* 411 U.S. 564, 575, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973). *See generally Swan v. Stoneman,* 635 F.2d 97, 103–04 (2d Cir. 1980). The Fifth Circuit recently adopted a similar qualified exhaustion rule, *Patsy v. Florida International University,* 634 F.2d 900, 912 (5th Cir. 1981) (en banc) ("adequate and appropriate state administrative remedies must be exhausted before a section 1983 action is permitted to proceed in federal court, absent any of the traditional exceptions to the general exhaustion rule"), *cert. granted sub nom. Patsy v. Board of Regents,* —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981), and the Supreme Court may soon address the split between courts applying such an exhaustion rule and those applying an absolute nonexhaustion rule, *see Patsy,* 634 F.2d at 908–09.

■ Under the Second Circuit rule, Judge Nickerson's decision to take jurisdiction over these actions notwithstanding lack of exhaustion was correct. He noted that administrative action from 1974 to 1979 by the Commissioner pursuant to the 1971 complaint in *Matter of Reid,* 13 Ed. Dep't Rep. 117, had been ineffective in achieving

appropriate education for the handicapped in New York City. He also noted that counsel for the Commissioner had conceded at a hearing in *Jose P.* that "he would be unable to expeditiously process the appeals of all the members of the plaintiff class were they to pursue administrative proceedings." And especially in light of the Commissioner's acknowledgment that the City Board's compliance with his orders in *Reid* "was not as much as [he had] wished," there is no reason to expect that the City is about to hire the hearing officers that literally thousands of individual cases would require. This was enough to conclude that New York's administrative remedies were not adequate or speedy.[2] Moreover, the state administrative remedies, which involve only the placement of individuals, could well be found inappropriate to a problem Judge Nickerson described as "complex" and "polycentric," as due in part to "the bureaucratic infrastructure involved in the evaluation and placement process," and as appropriate for resolution by a master, taking a structural approach, rather than by more traditional adjudication. *See New York State Association for Retarded Children v. Carey,* 596 F.2d 27, 31–34 (2d Cir. 1979); O. Fiss, *The Civil Rights Injunction* (1978) (*passim*); Chayes, *The Role of the Judge in Public Law Litigation,* 89 Harv.L.Rev. 1281 (1976); Oakes, *The Proper Role of the Federal Courts in Enforcing the Bill of Rights,* 54 N.Y.U.L.Rev. 911, 944–46 & n.218 (1979).

Under these circumstances, the court could not be sure that resort to state administrative remedies would not be "futile" for purposes of obtaining class relief. *See Riley v. Ambach,* 668 F.2d 635, 641 (2d Cir. 1981) (acknowledging that exhaustion is not required where it would be futile or remedies inadequate) (citing *Armstrong v. Kline,* 476 F.Supp. 583, 601–02 (E.D.Pa.1979) (holding failure to exhaust state remedies excused by futility) *remanded on other*

---

**2.** This serves also to distinguish the two district court cases relied on by the Commissioner, *Newton v. Board of Educ., Niagara Falls,* No. 80 Civ. 271 (W.D.N.Y.1981), and *Davis v. Maine Endwell Central School Dist.,* 646 F.2d 560 (N.D.N.Y.1980), each of which involved due process procedural rights of an individual student. *See also New York State Ass'n for Retarded Children, Inc. v. Carey,* 466 F.Supp. 487 (E.D.N.Y.), *aff'd,* 612 F.2d 644 (2d Cir. 1979).

grounds, *Battle v. Pennsylvania*, 629 F.2d 269 (3d Cir. 1980), *cert. denied*, 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981)). Nor should the plaintiffs have been relegated to state procedures the inefficacy of which in part prompted their section 1983 action.

The Commissioner argues strenuously that this case is controlled by *Riley v. Ambach*, which addressed the "federal scheme regarding the education of handicapped children," 668 F.2d at 636, and reversed for failure to exhaust state administrative remedies a decision in favor of eighteen children questioning the New York State Commissioner's definition of learning discrepancy. The plaintiffs in *Riley* claimed this definition was inconsistent with the federal definitions set forth in the EHA and accompanying regulations. In applying the exhaustion rule in *Riley*, the court explicitly noted the need for utilizing administrative expertise where the questions were difficult and technical, and the desirability of avoiding a lengthy and costly federal trial. *Id.* at 640. Neither of these policies apply here, however. The questions at issue are not technical, but concern the numbers of children on waiting lists, the availability of programs, and the adequacy of physical facilities. And administrative procedures have proved inexpeditious in the related *Matter of Reid.* Despite appellant Commissioner's order in *Reid* and his retention of jurisdiction for five years, at the time the instant complaints were filed there was concededly "an increase in the numbers of children awaiting evaluation or placement." Thus handicapped children similarly situated to the plaintiffs in the instant cases have resorted to the state administrative process;

as found by Judge Nickerson below, however, there was a demonstrated lack of a "meaningful administrative enforcement mechanism."

### *Liability of the State Commissioner of Education*

The Commissioner appeals from the judgment against him, arguing that in light of his limited supervisory obligations under the EHA, he committed no act or omission depriving plaintiffs of their rights. Plaintiffs counter first, that this appeal is estopped by the Commissioner's consent to the judgments entered, and second, that the Commissioner did fail to meet a statutory obligation to enforce compliance with the EHA.

■ The Commissioner arguably conceded failure to meet his statutory duties by his letter of December 10, 1979, reprinted in the margin, finding the judgment satisfactory and offering no objection other than one to the wording of paragraph seven, which dealt not with liability but with means of enforcing compliance.[3] Paragraph one of the judgment, to which the Commissioner made no objection, declared without distinguishing between city and state defendants that "Defendants have not made available to the plaintiff class a free appropriate public education in a timely manner, thus violating the requirements of federal and New York law and regulations." Thus his appeal is inappropriate.

■ But even if not precluded by consent, the state defendants could properly be found to have failed to meet the requirement of 20 U.S.C. § 1412(6) that "[t]he State educational agency shall be responsi-

---

3. Dear Judge Nickerson:

   The proposed judgment in the above entitled case, as submitted to you with the Special Master's Report, is satisfactory to this Office, with one reservation. Paragraph 7 concludes with the following sentence:
   "Any disputes concerning State defendant's responsibility under 45 C.F.R. § 121a.360 shall be resolved by the Special Master or the Court upon the application of any party."
   The use of the term "resolved" raises a question as to whether some form of binding

arbitration could be inferred. Since our problem with § 121a.360, as set forth in paragraph 2 of the Special Master's Report, involved a question of the statutory power of the Commissioner of Education we could not agree to a determination on a paragraph 7 issue which would not be appealable. Possibly instead of "resolved by" the phrase "referred to" might be used.
   Other than our concern over paragraph 7, this Department has no objection to the proposed judgment.

ble for assuring" that the local agencies comply with the policies of the EHA. *See also* 34 C.F.R. § 300.601. The State likewise could properly be found to have failed to meet its obligation under the Rehabilitation Act § 504, 29 U.S.C. § 794,[4] to ensure that programs in the state do not discriminate on the basis of handicap. *See* 34 C.F.R. § 104.4(b)(1)(v). Thus Judge Nickerson correctly concluded that while the "primary responsibility" was the City's, the "Commissioner ... also bears a share of the responsibility [because of] [h]is failure to enforce federal and state laws and to provide adequate general supervision over the New York City School system ... [and to] ensure compliance with [his] orders" with respect to education of the handicapped.

■ The only basis on which the liability of the state defendants might be dubious, if the Commissioner had not consented to the judgment, is the Equal Protection Clause of the Fourteenth Amendment, as the State's failure to fulfill its supervisory responsibility might, *see Panitch v. Wisconsin*, 444 F.Supp. 320, 322 (E.D.Wis.1977) (handicapped student placement), or might not, *see Arthur v. Nyquist*, 573 F.2d 134, 145-46 (2d Cir. 1978) (school racial segregation), be enough to constitute intentional discrimination. We need not reach this issue, nor does it affect the Commissioner's appeal. Jurisdiction was properly predicated on allegations of the State's failure to meet statutory and constitutional obligations, and attorneys' fees may be awarded in cases where the prevailing claims are based only on violations of federal statutes, *see Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

### Award of Attorneys' Fees

■ Appellant Commissioner argues that plaintiffs failed to "prevail" against him within the meaning of 42 U.S.C. § 1988.

This borders on the frivolous in light of the judgment finding the state as well as the city defendants in violation of statutory obligations and ordering them to comply. *See, e.g., Holley v. Lavine*, 605 F.2d 638, 646 (2d Cir. 1979).

■ The only issue remaining on the appeal, then, is whether Judge Nickerson's failure to conduct an evidentiary hearing on the allocation of responsibility for attorneys' fees was an abuse of discretion. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 473-74 (2d Cir. 1974), is inapposite, as no factfinding was required here to determine the fair and reasonable *amount* of attorneys' fees, to which the parties stipulated. The fact that the plaintiff classes were without appropriate educational placement was not in dispute. Determination of the *degree* of the State's culpability required inquiry only into the State's legal obligations, which Judge Nickerson adequately undertook without need for a hearing.

■ On the City's cross-appeal, we think that Judge Nickerson's decision to apportion fees according to relative culpability was within his discretion, *see Rogers v. International Paper Co.*, 510 F.2d 1340, 1357 (8th Cir.), *vacated and remanded on other grounds*, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975), notwithstanding that there was no trial assessing relative culpability. As stated above, culpability turned on an estimate not of factual but of legal responsibility.

■ The only issue remaining on the cross-appeal is whether the court's estimate of legal responsibility (80% City, 20% State) was incorrect. Given that it is the State's obligation under the EHA, 20 U.S.C. §§ 1412, 1414, and under N.Y.Educ.Law §§ 4402, 4403, only to supervise educational opportunities provided directly by the school districts, this allocation in our view is not clearly erroneous.

Judgment affirmed.

---

**4.** Because plaintiffs here stated a cause of action under section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the decision in *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir. 1981), urged upon us by the Commissioner for the proposition that attorneys' fees are unavailable in an action brought under the EHA, is inapposite. It is not disputed that section 504 provides for a private right of action, *see Davis v. United Air Lines, Inc.*, 662 F.2d 120, 123 & n.7 (2d Cir. 1981), in which attorneys' fees may be obtained. Rehabilitation Act, 29 U.S.C. § 794a.