**Donnell COUNSEL**

v.

**John DOW, Superintendent of the New Haven Public Schools; New Haven Board of Education; Department of Education, State of Connecticut; Gerald Tirozzi; Commissioner of Education of the State of Connecticut; and Joyce C. Driskell, Hearing Officer, Connecticut Department of Education.**

Civ. No. N–85–577 (AHN).

United States District Court,
D. Connecticut.

May 28, 1987.

Legal Services Organization, Jerome N. Frank, New Haven, Conn., for plaintiff.

John Whelan, Asst. Atty. Gen., Hartford, Conn., Lubbie Harper, New Haven, Conn., for defendant.

## RULING ON MOTION FOR ATTORNEYS' FEES

NEVAS, District Judge.

The plaintiff, a young adult who is mildly retarded, brought suit on November 22, 1985, alleging a right to education under the Education for the Handicapped Act ("EHA"), 20 U.S.C. Section 1400 *et seq.*, and alleging a denial of due process and a violation of the Rehabilitation Act of 1973, 29 U.S.C. Section 701 *et seq.* The defendants fall into two groupings: the state defendants, comprised of the Connecticut Department of Education and various state officials; and the local defendants, comprised of the New Haven Board of Education and the superintendent of New Haven public schools. Both the state and local defendants answered the complaint. After negotiations, a consent decree was signed by all parties and entered by the court on July 18, 1986. The decree granted the plaintiff two years of compensatory education at the expense of the state defendants.

On November 3, 1986, the plaintiff filed for attorneys' fees under the Handicapped Children's Protection Act of 1986 ("HCPA"), Pub. L. No. 99-372, 100 Stat. 796, which amended section 615(e)(4) of the EHA as follows:

(B) In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped youth who is the prevailing party.

(C) For the purposes of this subsection fees awarded under this subsection shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection.

20 U.S.C. Section 1415(e)(4). President Reagan signed the HCPA into law on August 5, 1986; the provision for attorneys' fees was made retroactive to July 3, 1984, a date immediately before the United States Supreme Court decided *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). In *Smith*, the Court found that attorneys' fees are not recoverable under the EHA. *Id.* at 1005, 104 S.Ct. at 3464. In enacting the HCPA, Congress specifically intended to negate the holding in *Smith*. *See generally* S. Rep. No. 112, 99th Cong. 2d Sess. 2-3 (1985), *reprinted in* 1986 U.S. Code Cong. & Admin. News 1798, 1799-1800. However, at the time the court entered the consent decree in the instant action, the plaintiff was precluded by *Smith* from seeking attorneys' fees, amounting to $2,633, under the EHA.

■ The defendants oppose the plaintiff's use of the HCPA as the basis for an attorneys' fees award.[1] They argue that Congress lacked authority to provide for the retroactive application of the attorneys' fees provision of the HCPA. According to the defendants, Congress enacted the EHA pursuant to its spending power authorization in Article I, Section 8 of the Constitution and, therefore, cannot retroactively change the conditions upon which states receive funding under the EHA. In support of this position, the defendants rely upon *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) ("*Pennhurst I*"). In *Pennhurst I*, the Court found that Congress acted pursuant to the spending power when it enacted the Developmentally Disabled Assistance and Bill of Rights Act ("Act"), 42 U.S.C. Section 6000 *et seq.* *Id.* at 18, 101 S.Ct. at 1540. The Court stated

Unlike legislation enacted under section 5 [of the Fourteenth Amendment], however, legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds,

---

**1.** The state defendants concede that the plaintiff qualifies as a prevailing party and that the claimed fees are reasonable. The local defendants deny that the plaintiff was a prevailing party as to them; their argument will be addressed presently. Only the state defendants fully briefed the contention that the HCPA attorneys' fees provision is unconstitutional, but at oral argument on May 15, 1987, the local defendants adopted the state's argument in the event the court found that the plaintiff had prevailed against them. *See also* Memorandum in Support of Local Defendants' Objection to Plaintiff's Request for Attorney's Fees at 4-5.

the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract." [citations omitted.] There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously. [citations omitted.] By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation.

*Id.* at 17, 101 S.Ct. at 1540. The Court found that nothing in the Act's language and structure supported the conclusion that the Act was created pursuant to Congress' power to enforce the Fourteenth Amendment: "[I]t is a mere federal-state funding statute." *Id.* at 18, 101 S.Ct. at 1540.

The defendants argue that the contract analogy in *Pennhurst I* applies with equal force to the EHA. Under this reasoning, Congress breached the contract when it authorized retroactive attorneys' fees in the HCPA: There was no mutual assent to imposition of such an obligation on the state at the time the contract was formed. The defendants' reliance on *Pennhurst I* is misplaced, however. The *Pennhurst I* Court explicitly excluded discussion of Congress' authority to impose affirmative obligations on the states under the spending power or the Fourteenth Amendment. 451 U.S. at 10–11, 101 S.Ct. at 1536. The Court focused on Congressional intent as to an ambiguity in the Act, not on retroactive legislation. Thus, the defendants may not rely on *Pennhurst I* for the proposition that Congress may never pass retroactive legislation under its spending power. The court concludes that even if the EHA were passed solely under the spending power,

the retroactive provisions of the HCPA do not exceed Congress' power under the circumstances in this case.

Moreover, in drawing the contract analogy between the Act and the EHA, the defendants presuppose that Congress enacted the EHA entirely under its spending power. However, language in the EHA and in its legislative history demonstrates that the legislation rests, at least partially, on a Fourteenth Amendment underpinning. Paragraph 9 of Congress' Findings states: "[I]t is in the national interest that the Federal Government assist State and local efforts to provide programs to meet the educational needs of handicapped children in order to assure *equal protection of the law.*" 20 U.S.C. Section 1400(b)(9) (emphasis added). There is no comparable language in the legislation involved in *Pennhurst I.* The legislative history of the EHA contains the following:

> The Committee rejects the argument that the Federal Government should only mandate services to handicapped children if, in fact, funds are appropriated in sufficient amounts to cover the full cost of this education. The Committee recognizes the State's [sic; States'] primary responsibility to uphold the constitution of the United States and their own State Constitutions and State laws *as well as the Congress' own responsibility under the 14th Amendment to assure equal protection of the law.*

S. Rep. No. 168, 94th Cong., 2d Sess. 22 (1975), *reprinted in* 1975 U.S. Code Cong. & Admin. News 1425, 1446 (emphasis added). Congressional intent could not be more clear that the EHA, and the HCPA by implication, was enacted pursuant to section 5 of the Fourteenth Amendment.[2]

The standard of review for economic legislation enacted under the Fourteenth Amendment is the rational basis test.

> [T]he strong deference accorded legislation in the field of national economic policy is no less applicable when that

---

2. In *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Court makes numerous references to the fact that the EHA is "not simply a funding statute." *Id.* at 1010. The Court also held that in cases where the EHA

is applicable, the plaintiff may not bring a separate equal protection claim: "Congress perceived the EHA as the most effective vehicle for protecting the constitutional right of a handicapped child to a public education." *Id.* at 1013.

legislation is applied retroactively. Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by a rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches....

*Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984) (citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15–16, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976)). It is not difficult to conclude that Congress' decision to allow retroactive awards of attorneys' fees under the EHA was rationally related to a legitimate legislative purpose: Congress wished that "a parent or legal representative [of a handicapped child] should be free to select and be represented by the attorney of his/her choice." S. Rep. No. 112, 99th Cong., 2d Sess. 13 (1985), *reprinted in* 1986 U.S. Code Cong. & Admin.News 1798, 1803. Thus, the court finds that the provision of the HCPA making attorneys' fees retroactive is constitutional.[3]

The issue as to whether the plaintiff is entitled to attorneys' fees from the local defendants as well as from the state defendants is more difficult. On the one hand, it is undisputed that the plaintiff obtained the relief he sought. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). On the other hand, it is arguable that he did not obtain that relief from the local defendants: the state must bear the cost of the plaintiff's compensatory education. Furthermore, the

plaintiff attempts to justify attorneys' fees against the local defendants on a "culpability theory," but the plaintiff himself concedes that "at first blush, culpability in this case might appear difficult to assign, given the purpose of a Consent Decree to *avoid* assigning or accepting culpability." Plaintiff's Response to Court Order of March 5, 1987 (filed Apr. 6, 1987) at 15 (emphasis in original). Despite the plaintiff's assertion that such culpability is "clear" from the record in this case, such a view depends upon this court's endorsement of the plaintiff's view of the merits of this case. Such an approach appears to require the opposing parties to litigate the merits when the purpose of the consent decree was to avoid litigation of the merits. It also appears to demand that this court issue what is, in essence, an advisory opinion concerning the merits of a closed case.

However, the local defendants do concede that the plaintiff obtained a very limited measure of success at the administrative level.[4] In *Burpee v. Manchester School District*, 661 F.Supp. 731 (D.N.H.1987) and *Michael F. v. Cambridge School Department*, Civ. No. 86–2532–C slip op. (D. Mass. Mar. 5, 1987) [Available on WESTLAW, DCT database], two courts concluded that attorneys' fees under the EHA are available for plaintiffs who prevail at the administrative hearing level. Those decisions are fully persuasive. Accordingly, the court finds it appropriate to award attorneys' fees as to both the state and local defendants. The defendants have agreed such an award should be apportioned between

---

3. At oral argument, counsel for the state defendants presented the court with a recent case, *Abu-Sahyun v. Palo Alto Unified School District*, —— F.Supp. ——, 1986–87 EHLR Dec. 558: 275 (decided March 3, 1987), in which a federal district court in the Northern District of California ruled that the retroactivity provision of the HCPA did not support an award of attorneys' fees pursuant to a settlement agreement. The court based its holding on policy grounds alone: retroactive awards of attorneys' fees will discourage the making of settlement agreements. *Id.* at 558: 277. Of major importance to the court was the reasonableness of the attorneys' fees sought—$55,000. On this fact alone the *Abu-Sahyun* case is distinguishable from the instant one. The reasonableness of the $2,633

sought by plaintiff's counsel is not in question. In addition, the court never addressed the constitutionality of the HCPA retroactivity provision. Thus, *Abu-Sahyun* offers limited persuasive authority for the present controversy.

4. Before filing suit, the plaintiff sought relief, pursuant to 20 U.S.C. Section 1415, in an administrative hearing before an official of the Connecticut Board of Education. The local defendants were involved in that administrative process. On October 23, 1985, the hearing officer denied the plaintiff compensatory education. That denial resulted in the federal suit that produced the consent decree underlying this motion for attorneys' fees.

*them,* see *State Defendant's Response to March 5, 1987 Order (filed April 7, 1987) at 15, in the following manner: 80% from the state defendants and 20% from the local defendants.*

### Conclusion

The plaintiff's motion for attorneys' fees is granted as to both the state and local defendants. In accordance with this opinion, the defendants shall pay the plaintiff their full proportionate shares of $2,633 by no later than June 12, 1987.