**Donnell COUNSEL, Plaintiff–Appellee,**

v.

**John DOW, Superintendent of the New Haven Public Schools; New Haven Board of Education; Department of Education, State of Connecticut; Gerald Tirozzi, Commissioner of Education of the State of Connecticut; and Joyce C. Driskell, Hearing Officer, Connecticut Department of Education, Defendants–Appellants.**

**Nos. 308, 319, Dockets 87–7518, 87–7534.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 16, 1987.
Decided June 10, 1988.

Jerome N. Frank Legal Services Organization, New Haven, Conn. (Lisa Iglesias, Yale Law School, 1988 Law Student Intern) for plaintiff-appellee.

Lubbie Harper, Jr., New Haven, Conn. (Lubbie Harper, Jr., New Haven, Conn., on the brief), for defendants-appellants John Dow, Superintendent of the New Haven Public Schools and New Haven Bd. of Educ.

Joseph I. Lieberman, Atty. Gen., Hartford, Conn. (Robert W. Garvey and John R. Whelan, Asst. Attys. Gen., Hartford, Conn. on the brief), for defendants-appellants Dept. of Educ., State of Conn., Gerald Tirozzi, Com'r of Educ. of the State of Conn., and Joyce C. Driskell, Hearing Officer, Connecticut Dept. of Educ.

Before KEARSE and ALTIMARI, Circuit Judges, and LASKER, District Judge.[*]

LASKER, District Judge:

This is an appeal from a decision of the United States District Court for the District of Connecticut (Nevas, J.), awarding plaintiff Donnell Counsel attorney's fees from state and local educational authorities under the Handicapped Children's Protection Act of 1986 ("HCPA"), 20 U.S.C. § 1415(e)(4)(B)–(G) (Supp. IV 1986).

The appeal presents three issues: 1) whether the district court correctly determined that the HCPA's provision for retroactive attorney's fees was validly enacted pursuant to Congress' Spending clause powers and its enforcement power under Section Five of the Fourteenth Amendment; 2) whether the district court applied the proper standard and reached the correct result in determining that section 5 of the HCPA does not violate due process or the Tenth Amendment; and 3) whether the district court correctly determined that Counsel was a "prevailing party" entitled to attorney's fees from the local defendants as well as from the state defendants. We affirm the district court's determinations on the first two issues and reverse the district court on the third issue.

## Background

Donnell Counsel is a mildly retarded young adult from New Haven, Connecticut. In April 1985, Counsel initiated an administrative proceeding against the New Haven Board of Education and John Dow, Superintendent of the New Haven Public Schools ("the New Haven defendants") under the Education of the Handicapped Act ("EHA"), 20 U.S.C. § 1400 et seq. Counsel sought additional educational services as compensation for a two-year period during which he had been hospitalized in a state mental health facility and received little or no education. In October 1985, the hearing officer concluded that although the New Haven defendants were "fiscally responsible" for Counsel's education during the period in question,

> [b]ecause the Board could not initiate decisions or effect any control over [Counsel's] obtaining an education during [that] time ..., they have not been

---

[*] Hon. Morris E. Lasker, Senior District Court Judge of the United States District Court for the Southern District of New York, sitting by designation.

negligent in providing for his education. Thus the petitioner has no basis to make a claim for compensatory education from the Board.

Counsel then sought review of this administrative decision in the United States District Court for the District of Connecticut, requesting declaratory and injunctive relief, two years of compensatory education, damages, costs and attorney's fees. Counsel alleged that the New Haven defendants, together with the hearing officer, the Connecticut Department of Education and the Connecticut Commissioner of Education ("the Connecticut defendants"), had 1) wrongfully refused to recognize his right to compensatory education under the EHA, 2) denied him due process, and 3) violated the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

On July 18, 1986, after successful settlement negotiations between the parties, the district court entered a consent decree. The decree granted Counsel two years of educational services beyond the school year in which he turned twenty-one, to be paid for by the Connecticut defendants. No payments or obligations were imposed on the New Haven defendants. The decree did not make any reference to attorney's fees: at the time the decree was filed, Counsel was precluded from seeking attorney's fees by the Supreme Court's ruling in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), which held that the EHA was the exclusive avenue through which handicapped children could pursue claims against educational authorities and that attorney's fees were not recoverable in actions brought to secure EHA rights.

In August 1986 Congress enacted the Handicapped Children's Protection Act of 1986 ("HCPA"), Pub.L. No. 99–372, 100 Stat. 796 (codified as amended at 20 U.S.C. 1415(e)(4) (Supp. IV 1986)). The HCPA amended 1415(e)(4) of the EHA to provide explicitly that

[i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a handicapped child or youth who is the prevailing party.

20 U.S.C. § 1415(e)(4)(B). Section 5 of the HCPA specifies that the attorney's fees provision applies retroactively to any action or proceeding either pending on or brought after July 4, 1984, the day before the date of the decision in *Smith v. Robinson.*[1] In enacting the HCPA, Congress specifically intended to overrule *Smith. See* S.Rep. No. 112, 99th Cong., 2d Sess. 2–3, *reprinted* in 1986 U.S.Code Cong. & Admin.News 1798, 1799–1800.

Counsel then moved for attorney's fees under the HCPA. The Connecticut defendants, while conceding that Counsel qualified as a prevailing party against them and that the amount of fees requested was reasonable, argued that Congress had no constitutional authority to make the attorney's fees provision of HCPA retroactive. The New Haven defendants adopted Connecticut's arguments and, in addition, contended that Counsel was not a prevailing party with regard to them.

On May 28, 1987, the district court granted Counsel's motion for attorney's fees against both the Connecticut and New Haven defendants, awarding Counsel $2,633 in fees.[2] *Counsel v. Dow,* 666 F.Supp. 366 (D.Conn.1987). The court concluded that HCPA § 5 was a valid exercise of Congress' power under both the Spending clause and the Fourteenth Amendment, and that the provision for retroactive attorney's fees was rationally related to a legitimate legislative purpose. 666 F.Supp. at 367–69. In addition, the district court concluded that because "the local defendants ... concede that the plaintiff obtained a very limited measure of success [against them] at the administrative level," *id.* at

---

**1.** HCPA § 5 states in full:
   The amendment made by section 2 shall apply with respect to actions or proceedings brought under section 615(e) of the Education of the Handicapped Act after July 3, 1984, and actions or proceedings brought prior to July

4, 1984, under such section which were pending on July 4, 1984.

**2.** Defendants-appellants do not dispute that the $2,633 fee award is reasonable in amount.

369, it was appropriate to award attorney's fees against the New Haven defendants as well as against the Connecticut defendants.

## DISCUSSION

### I. *Congress' Authority to Enact HCPA § 5*

Defendants argue that the HCPA was enacted solely under Congress' Spending clause powers and that under *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), HCPA § 5's provision for retroactive applications for attorney's fees constitutes an abuse of those powers. We conclude both that defendants misread *Pennhurst's* holding as to the Spending clause and that, in any event, *Pennhurst* does not apply because Congress enacted the EHA and HCPA under its powers to enforce the Fourteenth Amendment as well as its Spending clause powers under U.S. Const. art. 1, § 8, cl. 1.

Assuming, *arguendo*, that HCPA was passed solely pursuant to Congress' Spending clause powers, the HCPA's provision for retroactive attorney's fees does not run afoul of the Supreme Court's decision in *Pennhurst*. In *Pennhurst*, the Court considered what it termed a question of "statutory construction," 451 U.S. at 15, 101 S.Ct. at 1538: whether a provision in a federal-state funding statute, enacted to assist participating states in caring for the developmentally disabled, could be constitutionally interpreted, after the participating states had accepted funding, as imposing enforceable obligations on those states.

In determining this issue, the *Pennhurst* court examined the possible sources of Congress' power to impose such conditions on the receipt of federal funds. After rejecting the argument that the statute in question was enacted pursuant to Congress' powers to enforce the Fourteenth Amendment, 451 U.S. at 15–17, 101 S.Ct. at 1538–1540, the Court examined the scope of Congress' Spending clause powers. The Court explained that as to

> Congress' power to legislate pursuant to the spending power, our cases have long recognized that Congress may fix the terms on which it shall disburse federal money to the States. Unlike legislation enacted under § 5, however, legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract." There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it.

*Id.* at 17, 101 S.Ct. at 1539–1540 (citations omitted).

Hence, the Court established a "rule of statutory construction" that "Congress must express clearly its intent to impose conditions on the grant of federal funds so that the States can knowingly decide whether or not to accept these funds." 451 U.S. at 24, 101 S.Ct. at 1543. Applying this principle to the legislation before it, the *Pennhurst* Court concluded that there was no indication in the language of the funding statute or its legislative history to suggest that Congress intended to impose enforceable obligations on participating states.

The Connecticut defendants, relying on language in *Pennhurst* that Congress' power to legislate under the spending power "does not include surprising participating States with postacceptance or 'retroactive' conditions," 451 U.S. at 25, 101 S.Ct. at 1544, argue that, under *Pennhurst*, the HCPA's provision for retroactive fee applications pursuant to the EHA is unconstitutional because it operates as a retroactive condition on the grant of EHA funds of which the states were unaware at the time they accepted these funds. However, *Pennhurst's* holding is not so broad.

Most important, the *Pennhurst* Court was not presented with and did not address the question of the constitutional limits on Congress' Spending clause power to impose an unambiguous retroactive condition on

the receipt of federal funds. Rather, the *Pennhurst* Court considered a question of congressional intent: whether ambiguous language in a funding statute could be interpreted, after acceptance of funding by the states, as evidence of congressional intent to impose obligations on the states. While the *Pennhurst* Court noted that "[t]here are limits on the power of Congress to impose conditions on the States pursuant to its spending power," it expressly stated that "[t]hat issue ... is not now before us." *Pennhurst*, 451 U.S. at 17 n. 13, 101 S.Ct. at 1540 n. 13. Instead, the Court focussed on the requirement that "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Id.* at 17, 101 S.Ct. at 1540; *cf. South Dakota v. Dole,* — U.S. ——, 107 S.Ct. 2793, 2796, 97 L.Ed.2d 171 (1987) (reading *Pennhurst* as articulating one of "several general restrictions" on Congress' spending power: that "if Congress desires to condition the States' receipt of federal funds," it must do so unambiguously).[3]

Hence, *Pennhurst* cannot be read as broadly prohibiting amendments which add retroactive conditions to funding statutes: at most, *Pennhurst* simply requires a clear indication of congressional intent to impose such conditions. In amending the EHA by enacting the HCPA, Congress explicitly provided that attorney's fees would be available for successful EHA plaintiffs and specified expressly its intent that this condition should apply retroactively to the identifiable two-year period during which awards of EHA attorney's fees had been precluded by the Supreme Court's decision in *Smith*. *Pennhurst* does not bar such an amendment.[4]

■ Defendants' reliance on *Pennhurst* is further misplaced because Pennhurst applies to legislation enacted solely pursuant to Congress' spending powers, and we conclude that the district court correctly determined that Congress enacted and amended the EHA pursuant to its enforcement powers under Section Five of the Fourteenth Amendment as well as its Spending clause powers.[5] In order to establish that legislation has been brought under Congress' Fourteenth Amendment enforcement powers, the court must

be able to discern some legislative purpose or factual predicate that supports the exercise of that power. That does not mean, however, that Congress need anywhere recite the words "section 5" or

---

**3.** Although no other circuit court has addressed the issue of the effect of *Pennhurst* on HCPA § 5, it is significant that those district courts which have considered this challenge to the HCPA's provision for retroactive attorney's fees have rejected defendants' position. *See, e.g., Unified School Dist. No. 259 v. Newton,* 673 F.Supp. 418, 424–25 (D.Kan.1987); *Capello v. District of Columbia Bd. of Educ.,* 669 F.Supp. 14, 19 (D.D.C.1987); *Moore v. District of Columbia,* 666 F.Supp. 263, 265 (D.D.C.1987); *School Bd. of the County of Prince William v. Malone,* 662 F.Supp. 999, 1000–01 (E.D.Va.1987); *Yaris v. Special School Dist.,* 661 F.Supp. 996, 1001 (E.D.Mo.1987); *Rollison v. Biggs,* 656 F.Supp. 1204, 1208–09 (D.Del.1987).

**4.** Connecticut also cites *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), and *Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), in support of its position. In *Bennett,* the Supreme Court considered whether substantive amendments to a funding program could be interpreted to have retroactive application. The *Bennett* court noted that in *Bradley,* the Court had held that a statutory provision for attorney's fees applied retroactively to a fee request that was pending when the statute was enacted

unless application of the provision " 'would infringe upon or deprive a person of a right that had matured or become unconditional,' " 470 U.S. at 639, 105 S.Ct. at 1560 (quoting *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020). The *Bennett* Court then reasoned that to apply the substantive amendments in question retroactively would be unfair, and concluded that "absent a clear indication to the contrary in the relevant statutes or legislative history, changes in the substantive standards governing federal grant programs do not alter obligations and liabilities arising under earlier grants." *Id.* at 641, 105 S.Ct. at 1561. Hence, in *Bennett,* as in *Pennhurst,* the key to whether retroactivity or retroactive interpretation is allowed is whether Congress has made its intentions clear. These cases are not relevant here, where Congress' intent to apply the HCPA retroactively was unambiguous. *See Rollison v. Biggs,* 656 F.Supp. 1204, 1208–09 (D.Del.1987).

**5.** Section Five of the Fourteenth Amendment states that "[t]he Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

"Fourteenth Amendment" or "equal protection."

*EEOC v. Wyoming,* 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983) (citations omitted). Although we bear in mind *Pennhurst's* warning that we "should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment," 451 U.S. at 16, 101 S.Ct. at 1539, the EHA's legislative history makes clear that the EHA has Fourteenth Amendment underpinnings.

While the *Pennhurst* Court concluded that nothing in the language of the statute under consideration or its legislative history suggested "that Congress intended the Act to be something other than a typical funding statute," *Pennhurst,* 451 U.S. at 22, 101 S.Ct. at 1542, expressing at most "a congressional preference for certain kinds of treatment," *id.* at 19, 101 S.Ct. at 1541, the language and legislative history of the EHA demonstrate otherwise. The EHA on its face makes a congressional finding that

> it is in the national interest that the Federal Government assist State and local efforts to provide programs to meet the educational needs of handicapped children in order to assure equal protection of the law.

20 U.S.C. § 1400(b)(9). Furthermore, views were stated in both Houses of Congress that the EHA was designed to implement the Equal Protection Clause.[6]

In interpreting this legislative history, the Supreme Court has affirmed several times that in enacting the EHA,

> Congress did not content itself with passage of a simple funding statute. Rather, the EHA confers upon disabled students an enforceable substantive right to public education in participating States and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act.

*Honig v. Doe,* —— U.S. ——, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988) (citations omitted); *accord Smith v. Robinson,* 468 U.S. 992, 1010, 104 S.Ct. 3457, 3467, 82 L.Ed.2d 746 (1984); *Hendrick Hudson Bd. of Educ. v. Rowley,* 458 U.S. 176, 200, 102 S.Ct. 3034, 3047, 73 L.Ed.2d 690 (1982); *Mrs. W. v. Tirozzi,* 832 F.2d 748, 750–51 (2d Cir. 1987). Hence we conclude, in accordance with the other courts which have considered the question, that the EHA and the HCPA, which amended it, were enacted pursuant to Congress' powers under § 5 of the Fourteenth Amendment, as well as under its spending powers. *See Crawford v. Pittman,* 708 F.2d 1028, 1036–38 (5th Cir. 1983); *David D. v. Dartmouth School Comm.,* 775 F.2d 411, 421 n. 7 (1st Cir. 1985), *cert. denied,* 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986); *Unified School Dist. No. 259 v. Newton,* 673 F.Supp. 418, 423–24 (D.Kan.1987); *Yaris v. Special School Dist.,* 661 F.Supp. 996, 1001 (E.D.Mo.1987); *Tonya K. v. Chicago Bd. of Educ.,* 81 Civ. 580, slip op. at 3–4 (E.D.Ill. July 20, 1987) [available on WESTLAW, 1987 WL 14699]; *St. Louis Dev'l Disabilities Treatment Center Parents' Assoc. v. Mallory,* 591 F.Supp. 1416, 1473–74 (W.D. Mo.1984), *aff'd,* 767 F.2d 518 (8th Cir.1985).

In sum, we reject defendants' argument that the HCPA's provision for retroactive availability of attorney's fees was an abuse of Congress' authority under *Pennhurst,* both because Congress made clear its intent to allow attorney's fees retroactively and because Congress acted pursuant to its Fourteenth Amendment enforcement powers.

## II. *Standard Of Review*

In determining whether retroactive legislation of an economic nature violates due process, the Supreme Court has made clear that

---

6. For instance, the Senate Committee wrote that it believed that "Congress must take a more active role under its responsibility for equal protection of the laws to guarantee that handicapped children are provided equal educational opportunity." S.Rep. No. 168, 94th Cong., 1st Sess. 9, *reprinted in* 1975 U.S.Code Cong. & Admin.News 1425, 1433. *See also Crawford v. Pittman,* 708 F.2d 1028, 1037 n. 39 (5th Cir. 1983) (discussing legislative indications that EHA was enacted under the Fourteenth Amendment).

[p]rovided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches.

*Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2717–18, 81 L.Ed.2d 601 (1984); *accord, Long Island Oil Products v. Local 553 Pension Fund*, 775 F.2d 24, 27 (2d Cir.1985). Similarly, any condition on federal grants, whether prospective or retroactive, must be "reasonably related to the federal interest in particular national projects or programs," *Massachusetts v. United States*, 435 U.S. 444, 461, 98 S.Ct. 1153, 1164, 55 L.Ed.2d 403 (1978) (citations omitted); *accord, Dole*, 107 S.Ct. at 2796.

■ The Connecticut defendants argue, however, that, in their words, "respect for the sovereignty of the states and the Tenth Amendment" require that the proper test to be applied where the retroactive legislation concerns education—a "sovereign state function"—should be "whether there is a[n] overriding federal interest in the legislation sufficient to justify the involuntary imposition of retroactive obligations on the states."

Defendants appear to argue that this proposition is supported by a "consideration" articulated in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), which they claim survived the Supreme Court's decision in *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), overruling *National League of Cities*. We find no merit in defendants' argument, which both misreads the holding of *National League of Cities* and underestimates the effect of *Garcia* in overruling it. Briefly, *National League of Cities* applied to legislation passed only under the Commerce Clause: the court explicitly stated that it did not consider "whether different results might obtain if Congress seeks to affect integral operations of state governments by exercising authority granted it under other sec-

tions of the Constitution such as the spending power ... or § 5 of the Fourteenth Amendment." 426 U.S. at 852 n. 17, 96 S.Ct. at 2474 n. 17. Furthermore, the Supreme Court has held that "a perceived Tenth Amendment limitation on congressional regulation of state affairs [does] not concomitantly limit the range of conditions legitimately placed on federal grants." *Dole*, 107 S.Ct. at 2797. *See also Gorrie v. Bowen*, 809 F.2d 508, 519 (8th Cir.1987) (rejecting, under *Garcia*, state's argument that federal conditions on receipt of AFDC regulations violated Tenth Amendment because it "infringes an area traditionally reserved to the state").

■ Connecticut also argues that even if a "rational basis" test is applied, the district court erred in finding that retroactive awards of attorney's fees under HCPA § 5 could be justified as rationally related to a legitimate purpose. We disagree. In enacting the attorney's fees provision, Congress sought to enforce the EHA by ensuring that the families of handicapped children would be able to find counsel willing to help enforce their rights. The retroactive allowance of attorney's fees furthers that goal in several ways. It assists indigent families with handicapped children by providing legal services organizations who have represented such clients in EHA suits, as here, with the necessary resources and incentive to continue to represent them. Retroactive provision of fees also assists those families who have retained private counsel by helping them to continue with ongoing EHA suits and by correcting the depletion of family resources spent in pursuing successful EHA claims. In addition, it is clear that one of the goals of the HCPA was to overrule *Smith v. Robinson* legislatively and thus to ensure that parents who brought EHA suits while *Smith* was still the law "may be awarded fees on the same grounds as parents whose action or proceeding [was] brought after the enactment of [the HCPA]." S.Rep. No. 112, 99th Cong., 2d Sess. § 5, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1798, 1805. "Curative" legislation such as this, which is designed to cure what Congress perceived as a defect in prior law, is entitled to partic-

ular deference. *See Temple Univ. v. United States*, 769 F.2d 126, 134 (3d Cir.1985) (Congress did not violate due process by giving retroactive effect to amendments to social security act which legislatively overruled Supreme Court decision), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1986); *Tonya K. v. Chicago Bd. of Educ.*, 81 Civ. 580, slip op. at 6 (E.D.Ill. July 20, 1987) (HCPA § 5 entitled to deference as curative legislation intended to overrule *Smith* ).

In sum, HCPA's retroactive attorney's fees provision serves the rational purpose of furthering the goals of the EHA by encouraging, assisting and making whole those plaintiffs and attorneys who worked to vindicate the rights of handicapped children under the EHA during the two-year period when the *Smith* decision precluded the award of attorney's fees under the EHA. *See Capello v. District of Columbia Bd. of Educ.*, 669 F.Supp. 14, 18 (D.D.C.1987) (Congress' rational purpose in enacting HCPA was "to overturn the impact of *Smith* to ensure that all parents, rich or poor, could resort to the courts to vindicate the rights of their handicapped children.").

### III. *The Fee Award Against the New Haven Defendants*

On the basis of the New Haven defendants' concession that Counsel had "obtained a very limited measure of success at the administrative level" against them, the district court concluded that it was "appropriate to award attorneys' fees as to both the state and local defendants." 666 F.Supp. at 369. Accordingly, the New Haven defendants were ordered to pay 20% of Counsel's fee award.[7] The New Haven defendants challenge the determination that Counsel is entitled to attorney's fees from them, arguing that attorney's fees are unavailable for work done in connection with administrative hearings under the EHA, and that Counsel did not prevail against the New Haven defendants as required by the HCPA.

■ Under the HCPA, the court may award attorney's fees to any handicapped youth who is the "prevailing party." 20 U.S.C. § 1415(e)(4)(B). A plaintiff is considered a prevailing party for attorney's fees purposes if he succeeds on any significant issue in litigation which achieves some of the benefit the plaintiff sought in bringing suit. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).[8] Here, while Counsel clearly prevailed against the Connecticut defendants with respect to the consent decree, it is difficult to conclude that Counsel "prevailed" against the New Haven defendants, either at the administrative level or in connection with the consent decree, on any significant issue which achieved any benefit sought by Counsel, as required by *Hensley*.

First, we consider the question whether Counsel "prevailed" against the New Haven defendants under the *Hensley* standard through the consent decree which concluded Counsel's federal district court case. It is undisputed that under the consent decree Counsel achieved the relief he sought: two years of compensatory education. However, it is also undisputed that the decree imposes no obligations or expenses on the New Haven defendants. Although the New Haven defendants signed the decree, only the Connecticut defendants are required to pay for the costs of the compensatory education awarded and no obligations are imposed on the New Haven defendants.

Counsel, citing *Jose P. v. Ambach*, 669 F.2d 865 (2d Cir.1982), argues that he is

7. The Connecticut and New Haven defendants had previously agreed that in the event that a fee award was entered against both sets of defendants, the Connecticut defendants would pay 80% of the award and the New Haven defendants would pay 20%.

8. Although *Hensley* concerned an award of attorney's fees under 42 U.S.C. § 1988, the *Hensley* standard is " 'generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party.' " 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7. The Senate Report specifically states that the term "prevailing party" in the HCPA is to be "construed consistent with" the *Hensley* decision. S.Rep. No. 112, 99th Cong., 2d Sess. 13, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1798, 1803.

nevertheless entitled to fees from the New Haven defendants as well as the Connecticut defendants on the basis of the "relative culpability" of the defendants. We disagree. In *Jose P.*, the defendants conceded that they had failed to comply with the statutory requirements of the EHA, and the parties entered into a consent judgment which specified that the state and city defendants—without distinguishing between them—had violated the requirements of federal and New York law. The decree ordered both sets of defendants to take all necessary steps to come into compliance with the law. Under these circumstances, this Court rejected the city defendants' argument that the plaintiffs had not "prevailed" against them under § 1988 as bordering "on the frivolous in light of the judgment finding the state as well as the city defendants in violation of statutory obligations and ordering them to comply." *Jose P.*, 669 F.2d at 871.

Here, in contrast, the consent decree specifically states that none of the defendants admits any liability or violation of Counsel's rights. The district court correctly noted that to attempt to assess "relative culpability" under these circumstances would "require the opposing parties to litigate the merits when the purpose of the consent decree was to avoid litigation of the merits" and "to demand that this court issue what is, in essence, an advisory opinion concerning the merits of a closed case." 666 F.Supp. at 369. We agree that the consent decree provides no basis for an award of attorney's fees from the New Haven defendants.

The district court, however, concluded that it was "appropriate to award attorneys' fees as to both the state and local defendants" because the New Haven defendants "concede[d] that the plaintiff obtained a very limited measure of success at the administrative level." 666 F.Supp. at 369. Hence, we must also consider the question whether Counsel "prevailed" against the New Haven defendants under the *Hensley* standard at the administrative level.

■ As an initial matter, the New Haven defendants argue that under the rationale of the Supreme Court's decision in *North Carolina Dep't of Trans. v. Crest Street Community Council, Inc.*, 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986), attorney's fees may not be awarded under any circumstances for legal work done in connection with administrative hearings under the EHA. We disagree.

In *Crest Street*, community groups in a black neighborhood filed an administrative complaint with the United States Department of Transportation, challenging an allegedly race-biased plan to build a highway through their neighborhood. After negotiation, plaintiffs reached a settlement with the state and city defendants. The plaintiffs then filed an action in district court for attorney's fees under 42 U.S.C. § 1988. The Supreme Court, considering only the question "whether attorney's fees under § 1988 can be sought in a court action *other than* litigation in which a party seeks to enforce the civil rights laws listed in § 1988," *Crest Street*, 107 S.Ct. at 340 (emphasis in original), held that the *Crest Street* plaintiffs were not entitled to attorney's fees for work in connection with the negotiations which led to the favorable settlement. The Court found it "entirely reasonable to limit the award of attorney's fees to those parties who, in order to obtain relief, found it necessary to file a complaint in court." *Id.* at 341.

However, the *Crest Street* court explicitly stated that attorney's fees are available "for time spent on administrative proceedings to enforce the civil rights claim prior to the litigation," *Crest Street*, 107 S.Ct. at 341. Here, Counsel seeks attorney's fees for just such a purpose—to recover for time spent on the administrative hearing which, under the EHA, he was required to pursue prior to bringing a federal court action.[9] *Crest Street* does not bar the

---

9. Moreover, the *Crest Street* court concluded that "[t]he legislative history [of § 1988] clearly envisions that attorney's fees would be awarded for proceedings only when those proceedings are part of or followed by a lawsuit," 107 S.Ct. at 341. Here, in contrast, the language and

award of attorney's fees for work done in an administrative hearing where, as here, attorney's fees are sought for work done in connection with a statutorily required EHA administrative hearing which was followed by a federal court action brought to enforce the plaintiff's rights under the EHA.

There remains the question whether Counsel "prevailed" against the New Haven defendants under the *Hensley* standard at the administrative level. New Haven defendants concede that, as they put it, Counsel had an "extremely limited success" against them in the administrative hearing because the hearing officer found that the New Haven Board of Education was "fiscally responsible" for Counsel's education for the time period in question.

However, we cannot agree with the district court that this concession is sufficient basis for an award of attorney's fees against the New Haven defendants. Although the administrative hearing officer found that New Haven Board of Education was "fiscally responsible" for Counsel's education during the two year period when Counsel was hospitalized in a state mental health facility, she denied Counsel's claim for compensatory education, concluding that

> [b]ecause the Board could not initiate decisions or effect any control over [Counsel's] obtaining an education dur-

ing the time [in question], they have not been negligent in providing for his education. Thus the petitioner has no basis to make a claim for compensatory education from the Board.

Thus, the hearing officer's limited finding of fiscal responsibility brought Counsel no closer to the relief he sought. Nor is there any discernable connection between the hearing officer's finding as to the New Haven defendants on this issue and the consent decree's award of compensatory education to be paid by the Connecticut defendants.

Under these circumstances, even though New Haven's concession that Counsel enjoyed a "limited success" at the administrative hearing gives us pause, we cannot conclude that Counsel succeeded on any significant issue which achieved any benefit he sought through the administrative hearing against the New Haven defendants. Hence, Counsel cannot be considered a prevailing party as to New Haven. *See Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

In sum, we conclude that there is no basis for an award of attorney's fees against the New Haven defendants.

## Conclusion

For the reasons stated above, the decision of the district court is affirmed as to

legislative history of the HCPA indicate that Congress did intend to make attorney's fees available under the EHA for work done in connection with administrative hearings which are not followed by litigation in court. In fact, the HCPA on its face allows for attorney's fees "[i]n any action or *proceeding*," 20 U.S.C. 1415(e)(4)(B) (emphasis added), and specifically refers to administrative proceedings in discussing the circumstances under which attorney's fees are available, 20 U.S.C. § 1415(e)(4)(D). These and other indications of congressional intent, *see generally* Schreck, Attorneys' Fees for Administrative Proceedings Under the Education of the Handicapped Act, 60 Temple L.Q. 599, 639–50 (1987) (discussing EHA legislative history), suggest, as all but one of the many courts which have considered this question have concluded, that *Crest Street* does not bar attorney's fees for work done in EHA administrative proceedings even where the subsequent federal court action is brought solely to recover attorney's fees. *See Burr v. Ambach*, 683 F.Supp. 46, 47–49 (S.D.N.Y.1988) (Carter, J.); *Unified*

*School Dist. No. 259 v. Newton*, 673 F.Supp. 418, 422–23 (D.Kan.1987); *Moore v. District of Columbia*, 666 F.Supp. 263, 265 (D.D.C.1987); *Burpee v. Manchester School Dist.*, 661 F.Supp. 731, 732–33 (D.N.H.1987); *Prescott v. Palos Verdes Peninsula Unified School Dist.*, 659 F.Supp. 921, 923–25 & n. 3 (C.D.Cal.1987); *Michael F. v. Cambridge School Dept.*, No. 86–2532–C (D.Mass. March 5, 1987) [available on WESTLAW, 1987 WL 7752]; *see also Dodds v. Simpson*, 676 F.Supp. 1045, 1047 (D.Or.1987) (allowing attorney's fees for administrative hearing work based on legislative history of HCPA, with no discussion of *Crest Street*); *Kristi W. v. Graham Indep. School Dist.*, 663 F.Supp. 86, 88 (N.D.Tx.1987) (same); *School Bd. of Prince William County v. Malone*, 662 F.Supp. 999, 1001 (E.D.Va.1987) (same); *but see Rollison v. Biggs*, 660 F.Supp. 875, 877 (D.Del.1987) (*Crest Street* bars HCPA awards for administrative hearings "[b]ecause Congress intended that the HCPA be construed consistent with other fee-shifting statutes...").

the Connecticut defendants and reversed as to the New Haven defendants.